A TRUE COPY OF THE ORIGINAL ON FILE AND IN MY LEGAL CUSTODY.

CLERK, U.S. DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Post Russo

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



FILED
IN CLERK'S OFFICE
**COPY**
2004 JUN -4 P 1: 51

U.S. DISTRICT COURT
DISTRICT OF MASS.

NANETTE MACDONALD, )
)
Plaintiff, )
)
v. )  Civil Action No.:
)
KAKU ASSOCIATES, INC. )
and DICK S. KAKU, )
)
Defendants. )  **04** CV **1 1 2 1 8** RCL
)

## PETITION FOR REMOVAL

TO:    THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT
OF MASSACHUSETTS

Defendants Kaku Associates, Inc. and Dick S. Kaku (collectively, the "Defendants"),

through their counsel, hereby notice the removal to this Court of the action filed against them in

the Commonwealth of Massachusetts, Essex Superior Court, Civil Action Number 04-0952.

This action is removable because (1) there is diversity of citizenship between the parties and the

amount in controversy exceeds the jurisdictional minimum, and (2) it involves a federal law

claim.  As grounds for removal, Defendants state as follows:

1.    Plaintiff filed her eleven-count Complaint on or about May 21, 2004.  She has

alleged a violation of federal law under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e-2  ("Title VII") and the following state law claims:  (1) violation of MGL ch. 151B, § 4;

(2) violation of MGL ch. 214, § 1C; (3) violation of MGL ch. 12, §§ 11H, 11I; (4) violation of

MGL ch. 93, § 102; (5) fraud, deceit and misrepresentation; (6) breach of contract and breach of

implied covenant of good faith and fair dealing; (7) assault and battery; (8) intentional infliction

A TRUE COPY, ATTEST

DEPUTY ASST. CLERK

of emotional distress; (9) negligent infliction of emotional distress; and (10) respondeat superior.
A copy of the Complaint and Civil Action Cover Sheet are attached as <u>Exhibit A</u>. A copy of the
Summons is attached as <u>Exhibit B</u>.

2.      Defendants, through counsel, first received service of Plaintiff's Summons and
Complaint on or about May 27, 2004. This Petition for Removal is filed within thirty (30) days
of the receipt by Defendants of the Summons and Complaint as required by 28 U.S.C. § 1446(b).

3.      The United States District Court for the District of Massachusetts has diversity
jurisdiction over this case pursuant to 28 U.S.C. § 1332. Removal is proper under 28 U.S.C.
§ 1441 in that:

(a)     Plaintiff is a citizen and resident of Massachusetts. Complaint, ¶ 1.

(b)     Defendant Kaku Associates, Inc. is incorporated in California and maintains its
principal place of business in California.

(c)     Defendant Dick S. Kaku is a citizen and resident of California.

(d)     By this action, Plaintiff seeks monetary damages, including, but not limited to,
exemplary and/or treble damages. The amount in controversy in this case appears to a
reasonable legal certainty to be in excess of $75,000, exclusive of interest and costs.

4.      The United States District Court for the District of Massachusetts has original
jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff brings a claim under a
federal statute, Title VII. The additional state law claims alleged by Plaintiff may be removed
pursuant to 28 U.S.C. § 1441(c).

5.      Pursuant to Local Rule 81.1(a), within 30 days Defendants will file with this
Court certified or attested copies of all records and proceedings in the Essex Superior Court

2

action and certified or attested copies of all docket entries therein, including a copy of this Petition for Removal.

6.    Pursuant to Local Rules 3.1 and 4.5 of this Court, a civil cover sheet, civil category sheet and filing fee of $150.00 are enclosed with this Petition for Removal.

7.    A copy of this Petition for Removal and a Notice of Removal have this day been served by hand to Plaintiff and have been served by hand to the Essex Superior Court for filing pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendants respectfully request that the above-styled action pending in the Commonwealth of Massachusetts, Essex Superior Court, be removed to this Court.

Respectfully submitted,

KAKU ASSOCIATES, INC. and
DICK S. KAKU

By their attorneys,

*Lisa Gaulin*

Christine J. Wichers (BBO # 631857)
Lisa M. Gaulin (BBO # 645655)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, Massachusetts 02109
(617) 248-5000

Dated: June 4, 2004

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL (BY HAND) ON
DATE 6-04-04

3

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 4-932 | Trial Court of Massachusetts Superior Court Department County: Essex |
|---|---|---|

| PLAINTIFF(S) Nanette Macdonald | DEFENDANT(S) Kaku Associates Inc., and Dick Kaku |
|---|---|

FILED IN CLERKS OFFICE

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE 978-825-1300
Lester E. Riordan III
81 Washington Street, Suite 8
Salem, MA 01970
Board of Bar Overseers number: 663725

ATTORNEY (if known)
Christine Wichers, Esquire 2004 JUN -4 P 1:51
Choate, Hall & Stewart
Exchange Place
53 State Street, Boston, MA 02109

DISTRICT COURT
DISTRICT OF MASS.

## Origin code and track designation

Place an x in one box only:

[x] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B22 | **Employment Discrimination | ( F ) | ( x )Yes ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .

Subtotal $. . . . . . . . .

B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . $. . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
F. Other documented items of damages (describe)

$. . . . . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

** Employment Discrimination and Sexual Harrassment.

$. . . . . . . . . .
TOTAL $. 100,000.00
in excess.

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

FILED
CLERK
MAY 21 04
IN THE SUPERIOR COURT FOR THE COUNTY OF ESSEX

TOTAL $. . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on ispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____ DATE: 5/21/04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                          DOCKET NO. _____ 4 2052

---

NANETTE MACDONALD          )
                           )
        Plaintiff,         )
                           )                    4 2052
v.                         )
                           )    COMPLAINT
KAKU ASSOCIATES INC. AND DICK )
S. KAKU                    )
                           )
        Defendants.        )
                           )

---

### PARTIES

1.   Plaintiff NANETTE MACDONALD (hereinafter
     "Plaintiff") is sui juris and resides in
     Haverhill, Massachusetts.

2.   Defendant KAKU ASSOCIATES, INC. (hereinafter
     "Defendant Associates") does business in the
     State of California and, on information and
     belief, maintains a business office at 1453 Third
     Street, Suite 400, Santa Monica, California.

3.   Defendant DICK S. KAKU (hereinafter "Defendant
     Kaku") is sui juris and resides, on information
     and belief, in Northridge, California.

4.   Plaintiff reserves the right to amend this
     Complaint pending discovery as to additional

parties or to identify or substitute the parties identified herein.

## GENERAL ALLEGATIONS

5. Plaintiff NANETTE MACDONALD is a female.

6. On information and belief, Kaku Associates, Inc. is a corporation specializing in transportation planning, traffic engineering, and parking studies.

7. On information and belief, Defendant Kaku is the President and founder of Kaku Associates, Inc., as described in foregoing paragraph.

8. Plaintiff was involved in an intimate relationship with Defendant Kaku.

9. Defendants offered Plaintiff a position at Kaku Associates, Inc.

10. Plaintiff accepted Defendants' offer and Plaintiff was hired sometime in June 1996, or thereabouts.

11. At that time, Plaintiff was a very successful real estate broker in Hawaii.

12. Defendants hired Plaintiff as a Regional Manager of Kaku Associates, Inc.'s Hawaii office.

13. Plaintiff was initially paid through a temporary service agency.

14. Sometime in January 1997, or thereabouts, Defendants became a full-time employee paid by a salary.

15. Plaintiff's annual salary was $62,400 (US).

16. Plaintiff was to receive bonuses and salary increases.

17. Plaintiff received a company allowance of $5,000 per month.

18. Defendants provided a leased company car to Plaintiff for company travel.

19. Defendants made 401K contributions on Plaintiff's behalf, on information and belief, to Altres, Inc., from about January 1997 to December 2000, or thereabouts.

20. Plaintiff believed her employment with Defendants to be genuine.

21. As Regional Manager, Plaintiff assisted in the setting up of Defendants' Hawaii office.

22. Plaintiff's responsibilities, to set up the Defendants' Hawaii office, as described in the foregoing paragraph, included but was not limited to, negotiation of office service agreements, furniture agreements, telecommunications, and parking.

23. As Regional Manager, Plaintiff was responsible for the every day operations at Defendants' Hawaii office.

24. As Regional Manager, Plaintiff was responsible for such tasks as replying to job applicant's resumes, taking photos of job sites, and hand delivering documents to various clients.

25. Plaintiff hoped Defendants would begin to assign more meaningful tasks and projects to Plaintiff.

26. Plaintiff did in fact, work on a project called "Nimitz Highway/Neighbor Island Transit".

27. Plaintiff did in fact, work on a project called "Nimitz Highway Alternatives Analysis".

28. Plaintiff did in fact, work on a project called "Electric Cell/Hybrid Bus Demonstration Project".

29. Plaintiff did in fact, work on a project called "OMPO/ITS Prototype Project".

30. Sometime near or around November 1998, Plaintiff wanted to end the intimate relationship between herself and Defendant Kaku.

31. Plaintiff feared she would be terminated as a result of the break up.

32. From November 1998 to about August 1999, or thereabouts, Plaintiff began experiencing severe stomach problems.

33. From November 1998 to about August 1999, or thereabouts, Plaintiff began experiencing severe insomnia.

34. From November 1998 to about August 1999, or thereabouts, Plaintiff visited a doctor who suggested her stomach problems were stress-related.

35. From March 2000 through June 5, 2000, Plaintiff told Defendant Kaku numerous times she no longer wanted to continue an intimate relationship with Defendant.

36. During said time period, as described in foregoing Paragraph, Defendant Kaku's sexual advances upon Plaintiff were unwanted.

37. During said time period, as described in Paragraph 35, Defendant Kaku's sexual advances appeared to Plaintiff to be a condition to Plaintiff's tangible employment benefits.

38. During said time period, as described in Paragraph 35, Plaintiff's sexual relations with Defendant Kaku became involuntary.

39.  Near or around June 2000, Plaintiff retained
     Attorney David Simons to assist her with
     Defendant Kaku's unlawful employment practices.

40.  On June 5, 2000, or thereabouts, Plaintiff sent a
     letter to Defendant Kaku demanding he stop making
     sexual advances upon Plaintiff, said letter is
     attached hereto as Exhibit 1.

41.  As a result of Plaintiff's demand, Defendants
     terminated the Plaintiff's long-term employment.

42.  On June 26, 2000, or thereabouts, Defendants and
     Plaintiff entered into an agreement for
     Plaintiff's continued employment as Regional
     Manager.

43.  The agreement, as described in Paragraph 42,
     terminated the Plaintiff's long-term employment.

44.  The agreement between Defendants and Plaintiff,
     as described in Paragraph 42, guaranteed
     Plaintiff's employment through May 31, 2001.

45.  The agreement between Defendants and Plaintiff,
     as described in Paragraph 42, guaranteed that
     Plaintiff's salary was to remain unchanged.

46.  The agreement between Defendants and Plaintiff,
     as described in Paragraph 42, guaranteed that

Plaintiff was to "have use of the [Hawaii] office through the end of the current lease".

47. The agreement between Defendants and Plaintiff, as described in Paragraph 4, expressly guaranteed that there would be a reduction in Plaintiff's responsibilities to allow Plaintiff "adequate time to re-energize [her] real estate practice".

48. Defendants informed Plaintiff that as a condition to the continued employment, under the terms described in Paragraphs 43 through 47, Plaintiff was to (i) return the Chevron Corporate gas credit card Plaintiff used to conduct company business; (ii) return the Office Depot credit card Plaintiff used to purchase company supplies; (iii) terminate the telephone service in the Hawaii office; (iv) return two laptop computers to Defendants; (v) return the AT&T International credit card Plaintiff used to make long distance telephone calls.

49. All conditions, as described in foregoing paragraph, were satisfied by the Plaintiff.

50. As evidence of the agreement between Defendants and Plaintiff, as described in Paragraph 42,

Plaintiff's salary and related benefits were
reinstated.

51.  On or near August 2, 2000, or thereabouts,
Defendant Kaku demanded Plaintiff resume an
intimate relationship with Defendant.

52.  On or near August 3, 2000, or thereabouts,
Defendant Kaku began to harass the Plaintiff.

53.  Between August 3, 2000 through September 7, 2000,
or thereabouts, Defendant Kaku telephoned
Plaintiff over one hundred (100) times.

54.  Between September 2000 through October 2000, or
thereabouts, Defendant Kaku telephoned
Plaintiff's real estate office 2-3 times every
day.

55.  As a result of the above-described events,
Plaintiff was forced to seek the assistance from
a psychologist.

56.  On or near September 21, 2000, or thereabouts,
Defendants requested Plaintiff make a Harris 2000
Campaign contribution in the amount of $4,000.

57.  Defendants threatened to terminate Plaintiff if
she refused to make said contribution, as
described in the foregoing Paragraph.

58. Shortly thereafter, near or around September 25, 2000, Defendants sent Plaintiff a letter which indicated that Plaintiff had terminated her employment with Defendants.

59. The letter dated September 25, 2000, as described in the foregoing paragraph, was wholly false and misleading.

60. Plaintiff did not terminate her employment with Defendants.

61. In fact, Plaintiff was terminated by the Defendants because she refused to submit to Defendant Kaku's sexual demands.

62. The letter dated September 25, 2000, as described in Paragraph 58, was an attempt by Defendants to cover up Defendants' unlawful employment practices.

63. The letter dated September 25, 2000, as described in Paragraph 58, was an attempt by Defendants to deny Plaintiff the benefit of the oral employment agreement, as described in Paragraph 42.

64. On or near October 6, 2000, Plaintiff hired Attorney Angela Sousa to assist her with Defendants' unlawful employment practices (as set forth herein).

65.  Plaintiff intended to file an Ex Parte Petition
     for a Temporary Restraining Order and Injunction
     Against Harassment, in the State of Hawaii, near
     or around October 2000.

66.  Plaintiff intended to file said petition, as
     described in the foregoing paragraph, because she
     was concerned for the physical safety of herself,
     her husband and her children.

67.  Plaintiff intended to file said petition, as
     described in Paragraph 65, to prevent Defendant
     Kaku from contacting, threatening and/or
     physically abusing herself or her family members.

68.  Near or around October 2000, Plaintiff filed a
     sexual harassment claim and other claims with the
     Hawaii Civil Rights Commission and the Equal
     Employment Opportunity Commission (EEOC).

69.  On or near January 23, 2001, Plaintiff withdrew
     her sexual harassment claim and other claims, as
     described in the foregoing paragraph, from the
     Hawaii Civil Rights Commission and from the EEOC.

70.  Plaintiff did not file the Petition, as described
     in Paragraph 65 and withdrew claims described in
     Paragraph 68, due to threats and intimidation on
     the part of Defendants, including, but not

limited to, disclosure aspects of Plaintiff's and
Defendant Kaku's sexual relationship to
Plaintiff's family and future employers.

71. In addition to Defendants' threats and
intimidation, as described in the foregoing
paragraph, Defendants offered Plaintiff
employment as an independent contractor as part
of their attempt to dissuade her from filing her
petition, as described in Paragraph 65, or her
sexual harassment and other claims, as described
in Paragraph 68.

72. Sometime in February 2001, or thereabouts,
Plaintiff was hired by Defendants as an
independent contractor.

73. On or near April 25, 2001, Defendant Kaku
physically assaulted Plaintiff by grabbing and
shoving her.

74. On or near April 25, 2001, Defendants threatened
to send a confidential letter, addressed to
Plaintiff from Plaintiff's prior attorney, to
every person Plaintiff knows.

75. Defendants made said threat, as described in the
foregoing paragraph, to prevent Plaintiff from

seeking legal redress against Defendants for Defendants unlawful employment practices.

76. On or near May 9, 2001, Defendants threatened to have a Federal Bureau of Investigation agent place the Plaintiff under surveillance.

77. On or near May 9, 2001, Defendants threatened to have a Federal Bureau of Investigation agent "check" into Plaintiff's phone records.

78. Between May 17, 2001 through May 21, 2001, or thereabouts, Defendant Kaku telephoned Plaintiff nearly thirty (30) times.

79. Defendant Kaku telephoned Plaintiff at work many times during this time period, as described in foregoing paragraph, and forced Plaintiff to give up "floor duty" at her real estate office, as a result.

80. Said actions, as described in foregoing paragraph, made it difficult for Plaintiff to work.

81. Plaintiff filed an Ex Parte Petition for a Temporary Restraining Order on or near May 21, 2001.

82. Plaintiff filed said petition, as described in the foregoing paragraph, because she was

concerned for the physical safety of herself, her husband and her then five year old daughter.

83.  Plaintiff filed said petition, as described in Paragraph 81, to prevent Defendant Kaku from contacting, threatening and/or physically abusing herself or her family members.

84.  Sometime in June 2002, or thereabouts, Defendant Kaku requested Plaintiff pursue business for Defendants in Massachusetts.

85.  Sometime in August 2002, Defendants purchased four round-trip plane tickets, from California and/or Hawaii to Boston, for use from August 2002 through October 2002.

86.  On information and belief, Defendant Kaku came to Massachusetts for purposes of securing business for Kaku Associates, Inc.

87.  On or near August 22, 2002, Plaintiff moved from Hawaii to Haverhill, Massachusetts, in part, to distance herself from Defendants.

88.  Defendant Kaku continues to harass the Plaintiff.

89.  Between August 22, 2002 through the present, or thereabouts, Defendant Kaku has telephoned the Plaintiff in Massachusetts, at least sixty (60) times.

90.  Between August 2002 through the present, the
     telephone calls, as described in the foregoing
     paragraph, include telephone calls to her new
     place of employment.

91.  On information and belief, Defendant Kaku has
     telephoned the Plaintiff in Massachusetts, more
     than the number of times indicated in Paragraph
     89.

92.  On information and belief, Defendant Kaku
     purchased an AT&T calling card to place anonymous
     telephone calls to the Plaintiff.

93.  On information and belief, Defendant Kaku
     purchased several additional calling cards to
     place anonymous telephone calls to the Plaintiff.

94.  On information and belief, Defendant Kaku has
     traveled to Massachusetts in an attempt to
     physically make contact with the Plaintiff.

95.  From August 2002 to the present, or thereabouts,
     Defendant Kaku has contacted or attempted to
     contact Plaintiff, without Plaintiff's consent.

96.  From August 2002 to the present, or thereabouts,
     Defendant Kaku has contacted or attempted to
     contact Plaintiff, for the purpose of harassing,
     intimidating, and frightening the Plaintiff.

97.   Defendant Kaku has placed the Plaintiff in reasonable fear for her personal safety.

98.   Defendant Kaku has placed the Plaintiff in reasonable fear for the safety of her ex-husband and her two children.

99.   As a result of the Defendants actions, (as set forth above), Plaintiff has suffered from anxiety, insomnia, and depression.

## COUNT I

## VIOLATION OF 42 U.S.C. § 2000e-2

100.  Plaintiff reasserts and realleges Paragraphs 1 through 99 above as if fully set forth herein.

101.  Plaintiff is a member of a protected group within the meaning of 42 U.S.C. § 2000e-2 and 42 U.S.C. § 2000e-5(f)(1).

102.  Plaintiff was subject to unlawful sexual harassment by Defendant Kaku.

103.  The sexual harassment, as described in the foregoing paragraph, was based on the Plaintiff's sex.

104. Plaintiff's submission to Defendant Kaku's sexual demands were a condition of tangible employment benefits.

105. Beginning in March 2000, or thereabouts, Plaintiff refused said sexual demands, as described in the foregoing paragraph.

106. Plaintiff was terminated from her job as Regional Manager because she refused to submit to said demands.

107. The Plaintiff's reaction to said sexual harassment, as described herein, affected Plaintiff's tangible aspects of compensation, terms, conditions, and/or privileges of employment.

108. Defendants committed an unlawful employment practice by discharging Plaintiff because of her refusal to submit to Defendant Kaku's sexual demands.

109. Defendants committed an unlawful employment practice by discriminating against Plaintiff with respect to her compensation, terms, conditions, or privileges of employment because of Plaintiff's refusal to submit to Defendant Kaku's sexual demands.