IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION                                    Civil Action No. 04-11218-RCL


NANETTE MACDONALD                    )
                                     )
         Plaintiff,                  )
                                     )
v.                                   )
                                     )
KAKU ASSOCIATES INC. AND DICK        )
S. KAKU                              )
                                     )
         Defendants.                 )
                                     )


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Plaintiff, Nanette Macdonald, by and through her counsel, opposes Defendant's Motion to Dismiss and files this memorandum in support of Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss and requests this Honorable Court to deny Defendant's Motion to Dismiss and grant all further relief as is appropriate and just.

I.      STATEMENT OF FACTS

Nanette Macdonald has made an extreme effort to terminate all ties and communication with Defendant Kaku. Ms. Macdonald moved from Hawaii to Haverill, Massachusetts in August of 2002 to separate herself from Defendant Kaku. Macdonald Aff. and Complaint. Defendant Kaku refuses to leave her alone. From August 22, 2002 to the present Defendant Kaku has telephoned Ms. MacDonald 50 to 100 times. Defendant Kaku even admits to 20 of these phone calls in his affidavit. Kaku Aff.

1

Despite his past sexual harassment, he simply alleges that his actions were non-threatening and that he simply called to say hello. Id. This raises a factual dispute not appropriate on a motion to dismiss. However, there is no dispute that Kaku engaged in a workplace sexual relationship with Ms. Macdonald. Macdonald Aff. and Complaint. There is no dispute that he is aware of allegations as to sexual harassment. Id. There is no dispute that she attempted to terminate he relationship. Id.

The current situation between Ms. Macdonald and Defendant Kaku began several years ago. Defendant Kaku hired Ms. Macdonald as the Regional Manager of the Defendant Corporation, Kaku Associates, Inc on a contract basis. Macdonald Aff. and Complaint. In January of 1997, Defendant Kaku hired her as a full-time salaried employee. Id. Beginning in March 2000, Ms. Macdonald repeatedly told Defendant Kaku she wanted to end their intimate relationship. Id. During this time period, Defendant Kaku continued to make unwanted sexual advances toward her. Id. These advances appeared to Ms. Macdonald to be a condition on her tangible employment benefits. Id. Accordingly, Plaintiff's sexual relations with Defendant Kaku during this time period were involuntary. Id.

In response to this situation, Plaintiff retained Attorney David Simons, and on or about June 5, 2000 Plaintiff sent a letter to Defendant Kaku demanding that Defendant Kaku to stop making sexual advances upon her. Id. On or about June 26, 2000 Plaintiff and Defendant Kaku entered into an agreement terminating Plaintiff's long-term employment with the Defendant Corporation as May 31, 2001. Id.

On or about August 2, 2000, Defendant Kaku demanded Plaintiff resume an intimate relationship with him. Defendant Kaku then began harassing Plaintiff over the

telephone. Id. Between August 3, 2000 and September 7, 2000, Defendant Kaku telephoned Plaintiff over one hundred (100) times. Id. From September 2000 through October 2000, Defendant Kaku telephoned Plaintiff's real estate office 2-3 times every day. Id. This conduct continued unabated. For instance, from May 17, 2001 through May 21, 2001, Defendant Kaku telephoned Plaintiff nearly thirty (30) times. Id. In a faxed statement to Ivan Cruz, Defendant Kaku admits to trying to continue his affair with Plaintiff after breaking up in 2001 and being rebuffed often via Mr. Cruz. Id.

Mr. Kaku continued these harassing phone calls up to the filing of the administrative complaint. Id. These phone calls generally consist of Defendant Kaku calling and hanging up shortly after Ms. Macdonald answers the phone. Id. Given the pattern of the phone calls and Defendant Kaku's voice in the background, Ms. Macdonald is certain that they are being placed by Defendant Kaku. In fact, Mr. Kaku admits to some of these calls. Kaku Aff.

II.   ARGUMENT

1. PERSONAL JURISDICTION

In reviewing personal jurisdiction, the Court's inquiry is essentially twofold: (1) whether jurisdiction is authorized by the forum state's long-arm statute; and (2) whether the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. U.S.S. Yachts v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990); Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 218 (1st Cir. 1989); Ealing Corp. v. Harrods, Ltd., 790 F.2d 978, 981 (1986); Gray v. O'Brien, 777 F.2d 864, 866-67 (1st Cir. 1985). Massachusetts courts have interpreted the Massachusetts long-arm statute as authorizing "an assertion of jurisdiction over the person to the limits

3

allowed by the Constitution of the United States," "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441, 443, 280 N.E.2d 423 (1972), but "the constitutional due process analysis is only reached "when some basis for jurisdiction enumerated in the statute has been established.'" Gray, 777 F.2d at 866 (quoting Morrill v. Tong, 390 Mass. 120, 129, 453 N.E.2d 1221, 1227 (1983)).

The first step is to determine whether jurisdiction is authorized by statute. Sawtelle v Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). The Commonwealth's long-arm statute, GL ch. 223, § 3, provides in relevant part:

> [A] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth[1] . . . (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth [if he] engages in any other persistent course of conduct. . . .

In this case, subsection 3(d), dealing with "causing tortious injury in this commonwealth by an act or omission outside this commonwealth," provides authorization for jurisdiction over Kuku and Kuku Associates. The First Circuit has stated that the act or omission in question need not have been physically committed in the Commonwealth. For example, in Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972), the Court found that "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that

---

[1] "Transacting any business" within the meaning of GL ch. 223A, § 3(a) does not require that the defendant have engaged in only commercial activity; the general language applies to any purposeful acts by an individual, whether personal, private or commercial. See North American Video Corp. v. Leon, 480 F Supp 213 (D. Mass. 1979) (holding that defendant's initiation of telephone communications from outside state to employees of plaintiff in state and mailing of reports into state are activities pointing to conclusion that defendant transacted business in Massachusetts); see also Nova Biomedical Corp. v. Moller, 629 F.2d 190, 193 (1st Cir. 1980) (noting that, as interpreted by the Massachusetts Supreme Judicial Court, the "transacting any business" provision "is not limited to commercial activity by the defendant, but rather is general and applies to purposeful acts by an individual, whether personal, private, or commercial").

4

state, he has, for [subsection 3(d)] jurisdictional purposes, acted within that state." Id. See also North American Video Corp. v. Leon, 480 F. Supp. 213, 218 (D. Mass. 1979) (telephone calls by each defendant to a Massachusetts plaintiff satisfied subsection 3[d]); Ealing, 790 F.2d at 982 (holding that subsection 3(d) was an alternative jurisdictional basis). If a single telex suffices for jurisdiction to attach, as in Murphy, surely the more than 100 harassing, intimidating, and frightening telephone calls to the Plaintiff suffices as well. Therefore, Defendants' motion must fail.

In performing the minimum contacts analysis, one of the factors a court should consider is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Due process requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment). Cf. Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("it is essential . . . [that] the defendant purposefully avails itself of the privilege of conducting activities within the forum State. . . ."). The level of contacts necessary to constitute "fair warning" depends both on the cause of action asserted and whether the jurisdiction sought is general or specific. As the Supreme Court stated in the oft-cited case of Burger King Corp. v. Rudzewicz:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities. . . .

5

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). See also Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 112 (1987). See also Little, Brown & Co. v. Bourne, 493 F. Supp. 544 (D. Mass. 1980) (holding that defendant may be considered to have transacted business in Massachusetts even though he was physically absent from state).

"When a cause of action arises from the defendants' contacts within the forum, less is required to support jurisdiction than when the cause of action is unrelated to those contacts." Ealing, 790 F.2d at 983 (quoting Vencedor Manufacturing Co., Inc. v. Gougler Industries, 557 F.2d 886, 889 (1st Cir. 1977); International Shoe v. Washington, 326 U.S. 310, 317 (1945)). That fewer contacts are required is common where the cause of action is for alleged tortious conduct, as in the instant case. This rule also applies to intentional breaches of contract. Massachusetts courts have held that "a single act within the forum may . . . be sufficient to warrant the assertion of jurisdiction over a defendant." Morrill, 390 Mass. 120, 132, 453 N.E.2d 1221, 1229 (1983).

Here, Plaintiff alleges, inter alia, that the Defendants engaged in more than a "single act." In this case, the Defendants made numerous harassing, intimidating, and frightening calls to the Plaintiff in Massachusetts to induce her to make physical and sexual contact. Furthermore, the Plaintiff's cause of action arises directly out of these alleged contacts. Consequently, the focus in this case should be on "the relationship among the defendant, the forum, and the litigation. . . ." Shaffer, 433 U.S. at 204. Despite the persistent pattern of contact in this case, Defendants seek to minimize the significance of these unrelenting telephone contacts, citing Lakeside Bridge & Steel Co.

6

v. Mountain State Constr. Co., Inc., 597F.2d 596, 604 (7th Cir. 1979), cert. denied, 445 U.S. 907 (1980). See Defendants' Memorandum at 8-9. Defendants fail to appreciate that it is the communications themselves constitute the violations of the law. The communications are not incidental to mere business communications, but lie at the heart of the complaint.

Kaku and his corporation are subject to this action because they chose to make contacts designed to harass Ms. Macdonald. This epitomizes purposeful availment. In other words, had they refrained from using the telephone system as the instrument of their harassment, the jurisdictional question is different. See e.g. Product Promotions, Inc. v. Cousteau, 495 F.2d 483, 496 (5th Cir. 1974) ("contact by mail alone can be sufficient"); In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 235 (6th Cir. 1972) ("A letter or a telephone call may, in a given situation, be as indicative of substantial involvement with the forum state as a personal visit by the defendant or its agents"); Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365, 369 (8th Cir. 1969) (mail and telephone contacts relevant).

Indeed, the Lakeside court declined jurisdiction on the facts (contract negotiation via telephone). However, the Lakeside court specifically stated that interstate communications constitute sufficient contacts where "the forum state has a greater interest in protecting its citizens by providing a local forum in cases which involve effects 'of a sort highly dangerous to persons and things'" Lakeside, 596 F.2d at 602 (quoting Restatement (Second) of Conflict of Laws § 37, Comment A). In short, as Lakeside makes clear, in cases such as the instant case where the defendant's tortious conduct

7

through telephone communications and other tortious conduct is "highly dangerous" to the plaintiff, the court should find personal jurisdiction.

In the instant case, it is clear that the Defendants "purposefully directed" their activities at a Massachusetts resident by repeatedly calling the Plaintiff by telephone at her Massachusetts workplace. The Defendants "manifestly ha[ve] availed [themselves] of the privilege of conducting business" in the Commonwealth seeking to harm its residents in an employment and workplace context. In the circumstances of this case, such contacts exceed the necessary level of minimum contacts to satisfy due process.

Having demonstrated that the Defendants purposefully established minimum contacts within Massachusetts, the Court must now consider these contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting International Shoe, 326 U.S. at 320). In so doing, the Court should note the Supreme Court's admonition that "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. The Defendants have not presented such a "compelling case," but have merely raised a weak factual dispute as to the purpose of the phone calls. The Defendants have not demonstrated that they will be severely disadvantaged by having to come to Massachusetts to defend against the Plaintiff's claims.

The First Circuit "has recognized that it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction". Nowak v. ,94 F.3d 708, 718 (1st Cir. 1996) (finding jurisdiction over Hong Kong defendant under the long-arm statute). Thus,

to have any significance, the Defendants must show that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). The Defendants contend that appearing before this Court will be burdensome because they would have "to incur the burden and expense of traveling 3000 miles to Massachusetts." These inconveniences do not constitute unusual or constitutionally significant burdens where the Defendants have purposefully availed themselves of this forum as a result of their tortious conduct. Denckla, 357 U.S. at 253. If, in Nowak, the burdens faced by a Hong Kong defendant were insufficient to deny jurisdiction, then clearly such burdens are even less availing to the Defendants here. See Nowak, 94 F.3d at 718.

Furthermore, the Nowak court noted that

> Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims.

94 F.2d at 718 (citing Burger King Corp., 471 U.S at 473)

Accordingly, if Massachusetts has a strong interest in protecting its citizens from unsafe goods or services, it clearly have a strong interest in protecting its citizens from harassing and unsafe behavior perpetrated by the Defendants in the instant case. Furthermore, this Court must accord deference to the Plaintiff's choice of forum. Id. Accordingly, this Court's personal jurisdiction over the Defendants is mandated in this case. This conclusion is fully consistent with First Circuit precedent. See Keds Corp., 888 F.2d at 219; Hugel, 886 F.2d at 3-5; Ealing, 790 F.2d at 984 (single telex containing false statement sufficient to support jurisdiction); Hahn v. Vermont Law School, 698

9

F.2d 48, 51-52 (1983) (mailing of law school application sufficed); Nova Biomedical, 629 F.2d at 192-97 (sending of threatening infringement letters is clearly a "purposeful act," which is all that GL ch. 233A, § 3 requires); Salvador v. Meese, 641 F. Supp. at 1414-15 (investors alleged that attorney visited Massachusetts and made intentional misrepresentations that induced them to invest in Florida swampland; fact that this was attorney's sole contact with forum did not defeat jurisdiction); Leon, 480 F. Supp. at 217-19 (jurisdiction proper in fraud suit where nonresident defendant made phone calls to and attended meetings in Massachusetts).

In conclusion, the Defendants reached out from California to harass and intimidate Ms. Macdonald. She did not file suit, but asked them to stop. They agreed, but continued. When a Defendant reaches into Massachusetts to harm one of its resident, logic dictates that there is a likelihood that they will be pulled in to Massachusetts to make their defense. Justice so requires.

2. REBUTTAL TO DEFENDANT'S ARGUMENTS TO DISMISS PLAINTIFF'S CLAIMS

   a. Motion to Dismiss Standard

When ruling on a motion to dismiss under FED. R. CIV. P. 12(b)(6), the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Butland v. New Hampshire Dept. of Corrections, 229 F. Supp. 2d 75, 76 (2002); Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff

10

cannot recover on any viable theory." Id. at 76; Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)). The issue is not "what the plaintiff is required ultimately to prove in order to prevail on her claim, but rather what she is required to plead in order to be permitted to develop her case for eventual adjudication on the merits." Id. at 76; Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 472 (1st Cir. 2002).

    b. The Title VII Claim

Defendants argue that Plaintiff's claim for sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 fails as a matter of law because it is untimely and because Title VII does not provide for individual liability. In regard to timeliness, Defendant Kaku continued to harass the Plaintiff throughout the filing of her complaint in this case. The most recent phone contacts occurring in April and May 2004. Macdonald Aff., ¶3. See discussion *infra*.

Regarding Defendants' argument that Title VII does not provide for individual liability, Ms. Macdonald has adequately pled and verified that the Defendant, acting as President of Kaku Associates, Inc., took actions which are easily characterized as harassment and/or aiding and abetting said harassment (with respect to corporate actions) and took those actions with the full knowledge of the Defendant Corporation. Ms. Macdonald's complaint and verification easily establish an identity of interest between Kaku and his closely held corporation. Further, there is no doubt that the allegations adequately present a case of corporate ratification of wrongful acts.

c. The M.G.L. Chapter 151B Claim

Defendants argue that Chapter 151B Claim does not prohibit employment discrimination by an out-of-state employer. Further, Defendants argue that the claim would be time barred.

In the first instance, the corporation is easily cast as an in state employer where it engages in prohibited employment practices against a Massachusetts resident. The allegations sufficiently establish that the prohibited practices were directed against Ms. Macdonald in Massachusetts. To bar Ms. Macdonald from pursuing this claim would effectively dictate that Massachusetts cannot protect its residents from out of state sexual harassment. Clearly, the application of Massachusetts substantive law is constitutionally permissible where Massachusetts has "significant contact or significant aggregation of contacts, creating state interests" such that the application of Massachusetts law is "neither arbitrary nor fundamentally unfair." *See* Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-313 (1981).

d. Claims under G.L. c. 214, §1C and the Massachusetts Civil Rights Act

Defendants argue that Plaintiff's claim under G.L. c. 214 § 1C fails because Macdonald moved here after her employment ended, Kaku Associates employs six or more employees, and it is time barred. The claim that Ms. Macdonald's employment "ended" ignores that fact that Ms. Macdonald is treated as an employee within the meaning of the statute if, as a result of her status as an employee, she is subject to prohibited employment practices. To hold otherwise invites his Court to sanction the firing of employees as a means to insulate an employer from continuing and egregious actions as evident here. Further, Ms. Macdonald's employment contract relating to both

her status as an independent contractor and in terms of severance, implicitly prohibits sexual harassment. The benefits of this continuing employment agreement, which Ms. Macdonald adequately alleges have been violated, establish her status as an employee for purposes of the statute. The same argument applies to analysis under the Massachusetts Civil Rights Act. As to the number of Defendant's employees, Ms. Macdonald is, within the meaning of the statute, the only employee in Massachusetts.

As to the limitations issue, Massachusetts law applies where the actions are current and continuing. See discussion *infra*.

   e. The Fraud/Deceit/Misrepresentation Claim

Defendants assert that the Plaintiff's fraud claim presents a conflict of laws issue because the statute of limitations for a fraud claim differs in Hawaii from that in Massachusetts and California. However, Defendants fail to appreciate that this claim is based on conduct continuing into this year. Since the conduct is continuing and recent, the statute of limitations is not at issue. Furthermore, as discussed *infra* relative to limitations issues, conflict of law questions are resolved pursuant to forum law under the functional approach. This constitutes a fact and circumstance test. The facts and circumstances clearly turn on the factual allegations which have been verified by the Plaintiff. Thus, the court must accept them as true in relation to these motions. Given the factual dispute, dismissal is not appropriate.

   f. The Contract Claim

Defendants argue that Plaintiff's contract claim is time barred. Defendant's argument is incorrect because Massachusetts law applies to this case since the breach of

contract occurred here. The position also assumes the lack of personal jurisdiction and an incorrect application of conflict of law rules.

      g. The Assault and Battery and Intentional and Negligent Infliction of Emotional Distress Claims

Defendants argue that Ms. Macdonald's claims are not comprehensible, fail as a matter of law for failure to allege any negligence and are time barred. Ms. Macdonald has adequately alleged coercion as a means of procuring sexual favors. Ms. Macdonald has adequately pled and verified almost 100 phone calls to harasses and intimidate. Mr. Kaku simply counters that the calls were non-threatening. He admits to 20 calls. This raises a factual dispute. However, note that incessant phone calls at Ms. Macdonald's workplace where Kaku admits he simply hung up are, as logic dictates, less than friendly. Given his history, including the previous claim relating to harassment, it stretches the imagination that he was merely calling, as he puts it, to say hello." As to the limitations issue, Massachusetts law applies where the actions are current and continuing. See discussion *infra*.

Defendant's argument that the claim would be time barred is incorrect.

      h. The Respondeat Superior Claim

Defendants argue that Plaintiffs respondeat superior claim should be dismissed because it is a claim of derivative liability not an independent tort. In reality, the claim is that respondeat superior is well pled, but not viable as a separate count. As such, the motion to dismiss is really a motion to strike as duplicative. There is no rule prohibiting the delineation of this theory of recover as a separate count. It was done here to clearly

delineate liability relative to all issues involving torts committed by Mr. Kaku. The motion therefore should be denied.

      i.   Issues Relating to Limitations and Conflict of Laws

Ms. Macdonald has adequately plead sufficient facts to implicate the law of Massachusetts in support of her claim where she alleges 100 harassing and intimidating phone calls made to her place of employment in Massachusetts. The torts, contract breach and statutory violations took place here. Kaku (and his corporation) reached out to Massachusetts. The complaint merely asks that they be held accountable. However, these wrongs are part of a pattern of continuing conduct that implicates the laws of Hawaii and California. Had the Defendant argued that the substantive law of these jurisdictions should prevail based on the functional approach, then a different question is presented. Rather, Defendant argues that procedural aspects of non-forum law should bar this action. This is not the law.

As noted previously, the Defendants purposefully availed themselves of the jurisdiction of the Commonwealth by their tortious conduct. Under Massachusetts long-arm statute, causing tortious injury in the commonwealth provides the basis for jurisdiction. As such, under the controlling Massachusetts choice of law rule, substantive Massachusetts law will govern the adjudication of the Plaintiff's claims in this matter. Doody v. John Sexton & Co., 411 F.2d 1119, 1121 (1st Cir. 1969). Therefore, applying Massachusetts law in this case, where the tortious conduct began in Hawaii and continued into Massachusetts, up until the time the Plaintiff filed the instant action, is not unconstitutional. See Denkla, 357 U.S. at 253.

Further, the Court applies the choice-of-law rules of the forum state. St. Paul Fire and Marine Ins. Co. v. Birch, et. al., 233 F. Supp. 171, 175 (2002); See also Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941). Massachusetts conflicts law requires the Court to follow a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 631, 473 N.E.2d 662, 668 (1985); Cosme v. Whitin Machine Works, Inc., 417 Mass. 643, 646, 632 N.E.2d 832, 834 (1994). As a general rule, under this approach, Massachusetts applies its law to statute of limitations issues. Id. In making this application, "Massachusetts courts consider choice-of-law issues by assessing various choice-influencing considerations, including those provided in the Restatement (Second) of Conflict of Laws (1971), and those suggested by various commentators." St. Paul Fire and Marine Ins. Co. v. Birch, et. al., 233 F. Supp. 171, 176 (2002), Goebel v. Schmid Bros., Inc., 871 F. Supp. 68, 75 (D. Mass., 1994).

As indicated, under the choice of law principles set forth in the restatement, Massachusetts generally applies its own statute of limitations to permit a claim unless: "maintenance of the claim would serve no substantial interest of the forum; and the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence." Nierman v. Hyatt, 441 Mass. 693; 808 N.E. 2d 290, 292.

Massachusetts has a substantial interest in maintaining this claim. Defendant Kaku's harassment of the Plaintiff which began in August 2000 during the term of the contract continued through the filing of the Plaintiff's Complaint. Although Defendant

Kaku's harassment began while Ms. Macdonald lived in Hawaii, the tort continued has continued in throughout Ms. Macdonald's residence in Massachusetts. Massachusetts has a substantial interest in this claim because the Ms. Macdonald, a Massachusetts resident, is continuing to be harassed.

III.  CONCLUSION

WHEREFORE, Plaintiff, Nanette Macdonald, by and through her counsel, opposes Defendant's Motion to Dismiss and requests this Honorable Court to deny said motion and grant all further relief as is appropriate and just.

                                          Respectfully Submitted,
                                          NANETTE MACDONALD
                                          By and through her counsel

                                          Lester E. Riordan III
                                          81 Washington Street, Suite 8
                                          Salem, Massachusetts 01970
                                          Telephone (978) 744-9461
                                          BBO Number 633725

Dated: