UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NANETTE MACDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-11218-RCL |
| v. | ) | |
| | ) | |
| KAKU ASSOCIATES, INC. and | ) | |
| DICK S. KAKU, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

The Defendants, Kaku Associates, Inc. ("Kaku Associates") and Dick Kaku ("Kaku"),

file this memorandum in support of their motion to dismiss the Complaint due to the Court's lack

of personal jurisdiction over the Defendants, or, in the alternative, because the Plaintiff, Nanette

Macdonald ("Macdonald"), has failed to state a claim on which relief can be granted.

## I.    INTRODUCTION

Kaku is a California resident who is the owner and President of Kaku Associates, a

California company. Neither Defendant has any ties to Massachusetts.

Macdonald has alleged that she was employed by Kaku Associates in Hawaii until she

was terminated in September 2000. She has asserted claims for workplace sexual harassment,

unlawful termination of employment, workplace fraud, breach of contract of employment,

assault in the form of unwanted sexual relations, and infliction of emotional distress. Except for

a few phone calls from Kaku to Macdonald after she moved to Massachusetts in August 2002,

all of the factual allegations underlying Macdonald's claims occurred in California and Hawaii.

3707826v3

Although Macdonald retained counsel and filed a timely complaint with the Hawaii Civil Rights

Commission and the Equal Employment Opportunity Commission in 2000 promptly following

her alleged dismissal from Kaku Associates, she withdrew it and then waited more than three

years before filing this untimely lawsuit.

The Complaint should be dismissed in its entirety because Macdonald cannot establish

that this Court has personal jurisdiction over either Defendant. In the alternative, the Complaint

should be dismissed under Rule 12(b)(6) because each count is time-barred; applying the cited

Massachusetts statute to the parties' out-of-state employment dispute would be unconstitutional;

and/or the claim fails on other grounds.

## II.    FACTUAL ALLEGATIONS

### A.    Allegations Relating to Personal Jurisdiction

Kaku Associates, a transportation planning company, is a California corporation with its

principal place of business in California. Complaint, ¶ 6; Kaku Aff. (attached as Exhibit 1), ¶ 3.

It has never done business in Massachusetts and has no employees here. Kaku Aff., ¶¶ 5-6.

Kaku is the President and owner of Kaku Associates. Id., ¶ 3. He lives in California. Id.

¶ 2. He has stepped foot in Massachusetts only four times in his entire life, for four brief

vacations, all of which he took years ago, before Macdonald moved to Massachusetts in August

2002. Id. ¶ 7.

Macdonald alleges that she was employed by Kaku Associates. Complaint, ¶¶ 10, 14.

Assuming for purposes of this motion only that the allegation is true, Macdonald avers that she

was employed in Hawaii and that her employment ended on September 25, 2000. Id. ¶¶ 12, 58,

61.

2

In her unsworn Complaint, Macdonald has made certain allegations, some only "on information and belief," in an attempt to connect the Defendants to Massachusetts. Properly discounting the allegations that are contradicted by Kaku's sworn affidavit, the only fact tying either Defendant to Massachusetts is that Kaku telephoned Macdonald in Massachusetts several times in August - October 2002 (she moved here on August 22, 2002) and had pleasant conversations with her, and called her twice in Massachusetts in January 2003 just to say hello. See Complaint, ¶¶ 84-87, 89-91, 94-96; Kaku Aff., ¶¶ 5, 7, 10-12.

### B.   Allegations Relating to the Substantive Claims

The following allegations in the Complaint are accepted as true solely for purposes of this motion.

Macdonald and Kaku were lovers. Complaint, ¶ 8. Macdonald was a Hawaii resident who worked in Hawaii as a real estate broker. Id. ¶ 11. In 1996 she accepted Kaku's offer to work as the Regional Manager of Kaku Associates' Hawaii office. Id. ¶¶ 9, 10, 12.

Beginning in November 1998, Macdonald wanted to end the sexual relationship. Id. ¶ 30. She did not tell Kaku this, however, until March 2000. Id. ¶ 35. From March 2000 until June 5, 2000, she told him several times that she wanted to break up. Id. During this period Macdonald continued to have sex with Kaku only because she believed she needed to do so to keep her job. Id. ¶¶ 37-38.

In June 2000, Macdonald retained an attorney. Id. ¶ 39. On June 5, 2000, she sent Kaku a letter telling him to stop his sexual advances. Id. ¶ 40 & Exhibit 1. She told him that she was willing to either continue her employment or accept one year's severance pay. Id. As a result of Macdonald's letter, Kaku terminated her at-will employment and made her a contractual employee. Id. ¶¶ 41-44. The contract was oral. Id. ¶ 63. The contract promised Macdonald

3

continued employment as Regional Manager for Kaku Associates' Hawaii office until May 31, 2001. Id. ¶¶ 42, 44. While the contract was performed, Macdonald continued to receive the same salary as before, but in exchange for less work; Kaku had agreed that she could reduce her duties to give her time to re-energize her real estate practice. Id. ¶¶ 45, 47.

On August 2, 2000, Kaku demanded that they resume their sexual relationship and he began harassing Macdonald with telephone calls. Id. ¶¶ 51-53. Macdonald refused to resume the relationship. Id. ¶ 61. On September 25, 2000, Kaku terminated Macdonald's employment in a letter. Id. ¶¶ 58, 61. The letter falsely stated that she had resigned. Id. ¶¶ 58, 60. In fact, she was involuntarily terminated for refusing to submit to Kaku's sexual advances. Id. ¶ 61.

On October 6, 2000, Macdonald retained a new attorney. Id. ¶ 64. That month she filed a complaint with the Hawaii Civil Rights Commission (the "Hawaii Commission") and the federal Equal Employment Opportunity Commission (the "EEOC") accusing the Defendants of sexual harassment and other claims. Id. ¶ 68. She also intended to seek a restraining order against Kaku, but decided not to after Kaku threatened to disclose their relationship to her family and future employers, and also because Kaku Associates offered her work as an independent contractor. Id. ¶¶ 65, 70-71. For these same reasons, Macdonald withdrew her complaint from the Hawaii Commission and the EEOC in January 2001. Id. ¶¶ 69-71. She was represented by yet another lawyer when she did so. Kaku Aff. ¶ 14 & Exhibit A attached thereto.

In February 2001 Macdonald became an independent contractor for Kaku Associates. Complaint, ¶ 72. That relationship ended when Macdonald moved to Massachusetts in August 2002. Kaku Aff. ¶ 9. Kaku Associates never paid Macdonald as an employee or independent contractor after she moved to Massachusetts. Id.

4

On April 25, 2001, Kaku grabbed and shoved Macdonald and threatened to send everyone she knew a confidential letter written to her by one of her previous attorneys. Complaint, ¶¶ 73-74. Kaku did this to prevent Macdonald from seeking legal redress against the Defendants. Id. ¶ 75.

On May 9, 2001, Kaku threatened to have an FBI agent check into Macdonald's phone records and place her under surveillance. Id. ¶¶ 76-77. In May 17-21, 2001, Kaku called Macdonald almost 30 times. Id. ¶ 78. This caused her to file an *ex parte* petition for a restraining order against him on May 21, 2001. Id. ¶ 81.

More than a year later, on August 22, 2002, Macdonald moved to Massachusetts. Id. ¶ 87. Kaku called her several times in August - October 2002 and they had pleasant conversations. Kaku Aff., ¶ 12. He also called her twice in January 2003 just to say hello. Id. At no time did he threaten or harass her. Id. ¶ 13.

On March 22, 2004, Macdonald filed a Chapter 151B complaint against the Defendants with the MCAD. See Wichers Aff. (Exhibit 2) & Exhibit attached thereto. Macdonald's request to withdraw her complaint was allowed on April 2, 2004. See Complaint, ¶ 136 & Exhibit 2.

Macdonald filed this lawsuit in Massachusetts state court on May 21, 2004. The Defendants timely removed the case to federal court on June 4, 2004.

## III.    ARGUMENT

The Complaint must be dismissed because (A) the Court lacks personal jurisdiction over the Defendants, and (B) the Complaint fails to state a claim on which relief can be granted.

### A.    The Complaint Must Be Dismissed Because Macdonald Cannot Show that the Court Has Personal Jurisdiction Over the Defendants.

"As the plaintiff, [Macdonald] bears the burden of establishing personal jurisdiction." Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7 (1st Cir. 2002). She must show that the

3707826v3

Massachusetts long-arm statute grants jurisdiction, and that this Court's exercise of jurisdiction under the statute is consistent with the Due Process Clause of the United States Constitution. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002), cert. denied, 537 U.S. 1029 (2002). Because the statutory analysis and the due process analysis are coextensive, this Court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis." Id.

"The due process clause of the Constitution requires that two conditions be met before an out-of-state defendant can be brought into a forum in the state. First, the defendant must have purposely established 'minimum contacts' with the forum such that he can reasonably anticipate being haled into that forum's court. Second, if such contacts exist, the exercise of personal jurisdiction over the defendant must comport with 'fair play and substantial justice.'" Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 679 (1st Cir. 1992) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 476 (1985)) (internal citations and quotations omitted).

Thus, the first question is whether Macdonald has established that Kaku Associates and Kaku each has minimum contacts with the Commonwealth of Massachusetts. To meet her burden, Macdonald "may not rely on unsupported allegations in [her] pleadings." Id. at 675. Instead, "[t]he *prima facie* showing of personal jurisdiction must be based on evidence of specific facts set forth in the record. The plaintiff must go beyond the pleadings and make affirmative proof." Id. (citations and internal quotation omitted).[1]

Personal jurisdiction may be either general or specific. See Noonan v. Winston Co., 135 F.3d 85, 89 (1st Cir. 1998). "General jurisdiction exists when the litigation is not directly

---

[1] Unlike a Rule 12(b)(6) motion, a Rule 12(b)(2) motion for lack of personal jurisdiction is not converted to a summary judgment motion when it is supported and/or refuted by affidavits and other record evidence. See Fed. R. Civ. P. 12(b); e.g., Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik, 295 F.3d 59, 62-63 (1st Cir. 2002).

6

founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)). In contrast, "[s]pecific personal jurisdiction may be asserted where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Id. (citing Helicopteros, 466 U.S. at 414 & n.8). Macdonald cannot establish either general or specific jurisdiction for the following reasons.

### 1.    Macdonald Cannot Establish General Personal Jurisdiction.

Macdonald clearly cannot establish general jurisdiction since neither Kaku Associates nor Kaku has "engaged in continuous and systematic activity" in Massachusetts. Id. On the contrary, Kaku Associates has never done business in Massachusetts and has no employees here, and Kaku has set foot in the Commonwealth only four times in his life, all of which were for brief visits years ago.

### 2.    Macdonald Cannot Establish Specific Personal Jurisdiction.

The First Circuit has described the burden of proving specific jurisdiction as follows:

> Sufficient minimum contacts exist for specific jurisdiction when (1) the claim underlying the litigation directly arises out of, or relates to, the defendant's forum-state activities, (2) the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state courts foreseeable, and (3) exercising jurisdiction is fair under the gestalt factors.[2]

Id. at 90 (internal quotations omitted).

---

[2] The five "gestalt factors" are: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Noonan, 135 F.3d at 89 n.2 (internal quotation omitted).

7

Macdonald cannot establish specific jurisdiction over Kaku Associates because she has not alleged any wrongdoing by Kaku Associates in Massachusetts. Rather, all of her allegations against Kaku Associates concern her out-of-state employment and termination of employment.

Nor can Macdonald establish specific jurisdiction over Kaku. All of her allegations against him that are not rebutted by record evidence[3] relate to alleged workplace sexual harassment, unlawful termination of employment, and unwanted sexual relations that occurred in Hawaii or California. Kaku's *only* contact with Massachusetts is the twenty or so non-harassing telephone calls he made to Macdonald after she moved to Massachusetts. See Kaku Aff., ¶¶ 12-13. This single fact is plainly insufficient to meet any of the three requirements for specific jurisdiction set forth in Noonan. See 135 F.3d at 90.

More specifically, she cannot meet the first requirement, that "the claim underlying the litigation directly arises out of, or relates to, the defendant's forum-state activities," id., because Kaku's telephone calls to her in Massachusetts were not tortious.

Nor can she meet the second requirement, that Kaku's telephone calls were "a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state courts foreseeable." Id. It would come as a great shock to the millions of Americans who make interstate telephone calls every day that, simply by calling into a state other than their own, they have made it "foreseeable" that they may be hauled into a court in that state. "Use of the interstate telephone . . . to communicate with a [forum state] plaintiff, if constituting contacts supporting jurisdiction, would give jurisdiction to any state into which communications were directed," which is preposterous. Lakeside Bridge & Steel Co. v.

---

[3] As noted supra, to establish personal jurisdiction Macdonald "may not rely on unsupported allegations in [her] pleadings." Boit, 967 F.2d at 675. Rather, she "must go beyond the pleadings and make affirmative proof." Id.

8

Mountain State Constr. Co., Inc., 597 F.2d 596, 604 (7th Cir. 1979) (finding no specific personal jurisdiction over out-of-state corporation that communicated with plaintiff in the forum state, both by phone and by mail, concerning the contract that was the subject of the lawsuit). In our global and highly mobile society, in which we depend every day on interstate communications, interstate telephone calls are simply too tenuous a basis on which to base personal jurisdiction.

Finally, Macdonald cannot meet the third Noonan requirement, that exercising jurisdiction over Kaku would be fair and reasonable. See 135 F.3d at 90. Forcing Kaku to incur the burden and expense of traveling 3000 miles to Massachusetts to defend himself against claims that have nothing whatsoever to do with Massachusetts "would, holistically viewed, offend traditional notions of 'fair play and substantial justice.'" Pritzker v. Yari, 42 F.3d 53, 63 (1st Cir. 1994) (quoting Burger King, 471 U.S. at 476). When a plaintiff accuses a defendant of engaging in egregious face-to-face tortious activity in other states continuously over a four-year period, and thereafter he does nothing more than make some benign phone calls to the plaintiff after she has moved to the forum state, the plaintiff cannot satisfy at least two of the "gestalt factors" required for a finding of fairness. See Noonan, 135 F.3d at 89 n.2. Specifically, in that situation the forum state has little to no interest in adjudicating the dispute, and the lawsuit does not implicate the forum state's "substantive social policies." Id. (internal quotation omitted). Rather, the lawsuit implicates the substantive social policies of the state(s) where the alleged wrongdoing occurred.

For all of these reasons, Macdonald cannot meet her burden of proving that this Court has personal jurisdiction over either Defendant. Accordingly, the Complaint must be dismissed in its entirety.

9

3707826v3

**B.    All Counts in the Complaint Must Be Dismissed for
Failure to State a Claim on Which Relief Can Be Granted.**

In the alternative, even if Macdonald could somehow establish personal jurisdiction over

the Defendants, the Complaint would still need to be dismissed because each of the eleven

counts fails to state a claim on which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

### 1.    The Title VII Claim (Count I) Fails as a Matter of Law.

In Count I, Macdonald purports to state a claim for sexual harassment under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.  Specifically, she alleges that Kaku sexually

harassed her while she was employed by Kaku Associates, and that he terminated her

employment on September 25, 2000 because she refused to submit to his sexual demands. See

Complaint, ¶¶ 58, 61, 102-19. Her claim fails as a matter of law against both Defendants

because it is untimely.  It also fails against Kaku because Title VII does not provide for

individual liability.

"Title VII requires, as a predicate to a civil action, that the complainant first file an

administrative charge with the EEOC within . . . 300 days . . . after the discrimination

complained of, 42 U.S.C. § 2000e-5(e)(1), and that the lawsuit be brought within an even shorter

period (90 days) after notice that the administrative charge is dismissed or after the agency

instead issues a right-to-sue letter, id. § 2000e-5(f)(1)." Clockedile v. N.H. Dep't of Corrections,

245 F.3d 1, 3 (1st Cir. 2001).  "[T]his is basically an exhaustion requirement coupled with a short

statute of limitations both on complaining to the agency and on filing the subsequent court case."

Id. at 3-4.

The last act of alleged discrimination occurred on September 25, 2000, when Kaku Associates allegedly terminated Macdonald's employment.[4]  Macdonald promptly retained counsel and filed a timely Title VII charge with the EEOC and the Hawaii Commission in October 2000.  Complaint, ¶ 68.  Her counsel withdrew her complaint for her on January 23, 2001.  See id. ¶ 69; Kaku Aff., ¶ 14 & Exhibit A attached thereto.  Macdonald was required to file her Title VII claim in court no later than 90 days thereafter, or by April 23, 2001.  See Clockedile, 245 F.3d at 3.  She missed that deadline by more than three years.  Simply stated, her delay "bars the courthouse door."  Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999).

Not surprisingly, Macdonald claims there was a valid reason for her delay.  She avers that she sat on her rights because the Defendants "engaged in acts of intimidation and concealment to dissuade [her] from seeking legal redress under . . . Title 42 of the United States Code."  Complaint, ¶ 113.  Specifically, she claims that Kaku threatened to publicly disclose aspects of their sexual relationship.  Id. ¶ 70.  These allegations are insufficient as a matter of law to save her untimely claim for the following reasons.

Although an untimely Title VII claim may be saved under an equitable tolling or equitable estoppel theory, those defenses to a late filing are "reserved for exceptional cases."  Davis v. Lucent Techs., Inc., 251 F.3d 227, 234 (1st Cir. 2001).  "This court has respected Title VII's temporal strictures, and, accordingly, has taken a narrow view of equitable modification in Title VII cases."  Jensen v. Frank, 912 F.2d 517, 521 (1st Cir. 1990).  Equitable *tolling* applies only in those rare situations where "the plaintiff demonstrates 'excusable ignorance' of his statutory rights."  Am. Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 124 (1st Cir. 1998).

---

[4] To the extent Macdonald alleges she was sexually harassed while working for Kaku Associates as an independent contractor, see Complaint ¶ 72, her Title VII claim still fails because that statute protects only employees, not contractors.  See Alberty-Valez v. Corp. de P.R. Para la Difusion Publica, 242 F.3d 418, 421 (1st Cir. 2001).

3707826v3

Equitable *estoppel* applies only in those rare situations where an employee was aware of her rights, but her employer "lulled the plaintiff[] into believing that it was not necessary for [her] to commence litigation." Id. (internal quotation omitted). Macdonald has not alleged any facts to support either an equitable tolling or an equitable estoppel theory. She retained counsel promptly after her alleged termination, and not only knew her rights but asserted them by filing claims with the appropriate agencies. Moreover, Macdonald's defense – that it was Kaku's alleged threat to make their sexual relationship public which caused her not to file a sexual harassment lawsuit *in which her sexual relationship with Kaku would have become a matter of public record* – is patently absurd.

Because Macdonald filed her lawsuit more than three years after the statutory deadline, her Title VII claim fails as a matter of law against both Defendants. In addition, it fails against Kaku because Title VII does not provide for individual liability. See Healy v. Henderson, 275 F. Supp. 2d 40, 44-45 & n.39 (D. Mass. 2003); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993).

### 2. The Chapter 151B Claim (Count II) Fails as a Matter of Law.

In Count II, Macdonald purports to state a claim for sexual harassment under MGL Chapter 151B. Specifically, she claims that Kaku sexually harassed her while she allegedly was employed by Kaku Associates in Hawaii, and that he terminated her employment in Hawaii on September 25, 2000 because she refused to submit to his sexual demands. See Complaint, ¶¶ 58, 61, 127-38.[5]

Chapter 151B prohibits employment discrimination only by Massachusetts employers that employ six or more employees, at least one of whom worked in Massachusetts at the time of

---

[5] To the extent Macdonald alleges she was sexually harassed while working for Kaku Associates as an independent contractor, see Complaint ¶ 72, her Chapter 151B claim still fails because that statute protects only employees, not independent contractors. See Comey v. Hill, 387 Mass. 11, 15 (1982).

the alleged discrimination. See MGL ch. 151B, § 1(5); Curran v. Wells Dairy, No. 00-5660

(Mass. Super. Ct. July 13, 2001) (copy attached as Exhibit 3); see Chapin v. Univ. of Mass., 977

F. Supp. 72, 82 (D. Mass. 1997) (Lindsay, J.) ("Chapter 151B provides a comprehensive

remedial scheme for employment discrimination applicable to *Massachusetts employers* of at

least six persons") (emphasis added). It does not prohibit employment discrimination by an out

of-state employer against an out-of-state employee.

### a.     Because Massachusetts Has No Contacts with the Claim, Applying Massachusetts Law Would Be Unconstitutional.

It would violate the Due Process Clause and the Full Faith and Credit Clause of the

United States Constitution for a court to apply Massachusetts law to a dispute arising out of an

out-of-state employment relationship absent significant contacts between the claim and

Massachusetts. See Allstate Ins. Co. v. Hague, 449 U.S. 302, 311 (1981). "[F]or a state's

substantive law to be selected in a constitutionally permissible manner, that State must have a

significant contact or significant aggregation of contacts, creating state interests, such that choice

of its law is neither arbitrary nor fundamentally unfair." Id. at 312-13. The fact that the plaintiff

moved to the forum state after her employment ended, standing alone, is not a sufficient contact

for application of the forum's law to pass constitutional muster. See id. at 311 ("a

postoccurrence change of residence to the forum State – standing alone – [is] insufficient to

justify application of forum law") (citing John Hancock Mut. Life Ins. Co. v. Yates, 299 U.S.

178 (1936)); Yates, 299 U.S. at 182 (declining to apply Georgia law to a claim on a life

insurance contract simply because beneficiary wife moved to Georgia after her husband died;

because the contract was entered into in New York and the insured died there, New York's

insurance statute applied); Ferren v. Gen. Motors Corp. Delco Battery Div., 628 A.2d 265, 268-

69 (N.H. 1993) (holding that plaintiff's claim for a workplace injury he suffered as a Kansas

resident while employed in Kansas by a Kansas employer was time-barred under the Kansas

worker's compensation statute; New Hampshire's worker's compensation statute did not apply

simply because the plaintiff moved to New Hampshire after his employment ended); McCluney

v. Schlitz Brewing Co., 649 F.2d 578, 581-84 (8th Cir. 1981) (where plaintiff had worked in

Wisconsin for a Wisconsin employer, it was unconstitutional for the district court in Missouri to

apply Missouri's statute entitling terminated employees to a written explanation for their

termination simply because the plaintiff had moved to Missouri after his termination); see also

Armburg v. Boston & Maine R.R., 276 Mass. 418, 424 (1931) ("It is an implied condition of all

statutes that they are intended to be operative only within the jurisdiction of the legislative body

enacting them."). Because Massachusetts has no connection to Macdonald's employment with

Kaku Associates, Chapter 151B does not apply to a dispute arising out of that employment.

### b.    A Chapter 151B Claim Would Be Time-Barred.

Even if Macdonald could somehow show that Chapter 151B governed her employment in

Hawaii for a California employer, her claim would still fail because she filed her MCAD

complaint three years too late. As of September 25, 2000, when Macdonald's alleged

employment ended, the MCAD filing period was six months. See MGL ch. 151B, § 5 (2000)

("Any complaint filed pursuant to this section must be so filed within six months after the

alleged act of discrimination.").[6] However, she did not file a complaint with the MCAD until

three-and-a-half years later, on March 22, 2004. Therefore, her Chapter 151B claim is "fatally

deficient" and must be dismissed. Sereni v. Star Sportswear Mfg. Corp., 24 Mass. App. Ct. 428,

430 (1987).

---

[6] In 2002 the Legislature extended the filing period to 300 days. Even applying that longer period, Macdonald's MCAD complaint still was untimely.

14

Furthermore, Macdonald not only missed the six-month statute of limitations for her MCAD filing, she also missed the three-year statute of limitations for her court filing. See Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 784 (2001) ("a civil action brought pursuant to G.L. c. 151B must be commenced 'not later than three years after the alleged unlawful practice occurred'") (quoting MGL ch. 151B, § 9). Even if Macdonald had timely filed her Chapter 151B claim with the MCAD, she was still required to file her civil action no later than three years after the alleged sexual harassment ended – *i.e.*, no later than September 25, 2003. She did not file her court complaint, however, until May 21, 2004.

To the extent Macdonald claims her delay should be excused under an equitable tolling or equitable estoppel theory, her argument fails for the same reasons that her argument fails under Count I, see supra section III(B)(1), because Massachusetts law governing those narrow exceptions mirrors federal law. See Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631 (1997) (equitable tolling); Pagliarini v. Iannaco, 440 Mass. 1032, 1032 (2003) (equitable estoppel).

In sum, Count II must be dismissed because Chapter 151B does not apply and, even if it did, a claim under that statute would be time-barred.

### 3.    The Claim Under MGL Chapter 214, § 1C (Count III) Fails as a Matter of Law.

In Count III, Macdonald purports to state a claim for sexual harassment under MGL ch. 214, § 1C (the "Massachusetts Sexual Harassment Statute"). The allegations supporting this claim are exactly the same as those supporting her sexual harassment claim under MGL Chapter 151B (Count II). See Complaint, ¶¶ 140-45.

The Massachusetts Sexual Harassment Statute provides:

3707826v3

> A person shall have the right to be free from sexual harassment, as defined in chapter one hundred and fifty-one B [prohibiting sexual harassment in employment] and one hundred and fifty-one C [prohibiting sexual harassment in education]. . . . Any such action shall be commenced in the superior court within the time allowed by . . . section 9 of said chapter 151B. No claim under this section . . . shall be brought in superior court unless a complaint was timely filed with the Massachusetts commission against discrimination under said chapter 151B.

MGL ch. 214, § 1C. In contrast to Chapter 151B, which prohibits sexual harassment and other forms of discrimination by Massachusetts employers of six or more employees, the Massachusetts Sexual Harassment Statute prohibits sexual harassment by Massachusetts employers of fewer than six employees (and sexual harassment in education). See Guzman v. Lowinger, 422 Mass. 570, 572 (1996); Chapin v. Univ. of Mass., 977 F. Supp. 72, 82-83 (D. Mass. 1997) (Lindsay, J.).

The first reason this claim fails is that it would be unconstitutional to apply the Massachusetts Sexual Harassment Statute to a dispute arising out of the parties' out-of-state employment relationship[7] based solely on the fact that Macdonald moved here after her employment ended. See discussion supra, at section III(B)(2)(a); see also Vicarelli v. Bus. Int'l, Inc., 973 F. Supp. 241, 245 (D. Mass. 1997) (Lindsay, J.) ("Chapter 214 § 1C ensure[s] that all employees in Massachusetts, regardless of the size of their employers, . . . have a right to be free from sexual harassment") (emphasis added).

Second, even if Massachusetts employment law somehow applied, Count III would still fail because Kaku Associates employs six or more employees, see Kaku Aff. ¶ 4, and therefore the claim would be barred by the exclusivity provision of Chapter 151B. "Chapter 151B provides a comprehensive remedial scheme for employment discrimination applicable to

---

[7] To the extent Macdonald seeks protection under the Massachusetts Sexual Harassment Statute for events occurring after her alleged employment with Kaku Associates ended and she moved to Massachusetts, her claim fails because that alleged harassment did not occur in either the workplace or an educational setting. See MGL ch. 214, § 1C.

16

Massachusetts employers of at least six persons; and, where it applies, ch. 151B is the exclusive statutory remedy for claims for sexual harassment." Chapin, 977 F. Supp. at 82-83 (contrasting MGL ch. 214, § 1C); accord Green v. Wyman-Gordon Co., 422 Mass. 551, 555 (1996) (when the defendant employs at least six employees, "c. 151B's remedies and procedures are exclusive and bar the plaintiff's claim under G. L. c. 214, § 1C").

Finally, even if the Massachusetts Sexual Harassment Statute somehow applied, Macdonald's claim would still fail because it would be time-barred. The Massachusetts Sexual Harassment Statute specifically states: "No claim under this section . . . shall be brought in superior court unless a complaint was timely filed with the Massachusetts commission against discrimination under said chapter 151B." MGL ch. 214, § 1C. As noted in section III(B)(2), supra, the MCAD filing period when the alleged workplace sexual harassment occurred was six months. Thus, Macdonald was required to file her MCAD complaint no later than six months after her employment ended. Because she missed that deadline, her claim fails.

Macdonald's claim would also be time-barred because she missed not only the six-month statute of limitations for the MCAD filing, but also the three-year statute of limitations for the court action. The Massachusetts Sexual Harassment Statute specifically states: "Any such action [brought under this statute] shall be commenced in the superior court within the time allowed by . . . section 9 of . . . chapter 151B," MGL ch. 214, § 1C, which is "not later than three years after the alleged unlawful practice occurred," id. ch. 151B, § 9. Thus, Macdonald was required to file her court complaint no later than three years after the alleged workplace sexual harassment ended – i.e., no later than September 25, 2003. Because she missed that deadline too, her claim is time-barred.

17

### 4.    The Claim Under the Massachusetts Civil Rights Act
### (Count IV) Fails as a Matter of Law.

In Count IV, Macdonald purports to state a claim for violation of the Massachusetts Civil

Rights Act ("MCRA"), MGL ch. 12, § 11I, which creates a private right of action that may be

brought against anyone who interferes or tries to interfere with the plaintiff's legal or

constitutional rights through the use of threats, intimidation, or coercion. The MCRA provides

in relevant part:

> Any person whose exercise or enjoyment of rights secured by the
> constitution or laws of the United States, or of . . . the commonwealth,
> has been interfered with, or attempted to be interfered with, as
> described in section 11H ["by threats, intimidation or coercion"], may
> institute and prosecute in his own name and on his own behalf a civil
> action for injunctive and other appropriate equitable relief as provided
> for in said section . . . .

MGL ch. 12, § 11I. Macdonald alleges that Kaku violated the MCRA by making threats to deter

her from seeking legal redress for the workplace sexual harassment she allegedly encountered.

See Complaint, ¶¶ 70, 74, 76-77, 147-50.

The first reason this claim fails is that it would be unconstitutional to apply the MCRA to

a dispute arising out of the parties' out-of-state employment relationship based solely on the fact

that Macdonald moved here after her employment ended. See discussion supra, at section

III(B)(2)(a).

Second, even if the MCRA somehow applied, Macdonald's claim would still fail because

she missed the three-year statute of limitations. See Govan v. Trustees of Boston Univ., 66 F.

Supp. 2d 74, 81 (D. Mass. 1999) (MCRA claims are subject to the three-year statute of

limitations found in MGL ch. 260, § 5B). In support of her MCRA claim, Macdonald has

alleged that Kaku made three threats. The first of these occurred in late 2000-early 2001; the

second on April 25, 2001; and the third on May 9, 2001. See Complaint, ¶¶ 70, 74, 76-77. To

18

3707826v3

satisfy the statute of limitations, then, Macdonald was required to file her MCRA claim in court

no later than May 9, 2004. Because she missed this deadline, her claim is time-barred.[8]

### 5.    The Claim Under the Massachusetts Equal Rights Act (Count V) Fails as a Matter of Law.

In Count V, Macdonald purports to state a claim for violation of the Massachusetts Equal

Rights Act ("MERA"), MGL ch. 93, § 102, which prohibits discrimination in the making and

enforcement of contracts on the basis of, *inter alia*, gender. The statute provides in relevant part:

> All persons within the commonwealth, regardless of sex . . . , shall have
> . . . the same rights enjoyed by white male citizens, to make and enforce
> contracts, to inherit, purchase, to lease, sell, hold and convey real and
> personal property, to sue, be parties, give evidence, and to the full and
> equal benefit of all laws and proceedings for the security of persons and
> property . . . .

Although the Complaint is less than clear, it appears Macdonald is claiming that she was denied

the right to enforce her alleged oral employment contract when Kaku terminated her on

September 25, 2000 "because of her refusal to submit to [his] sexual demands." Complaint, ¶

164.

The first reason this claim fails is that it would be unconstitutional to apply the MERA to

a dispute arising out of the parties' out-of-state employment relationship based solely on the fact

that Macdonald moved here after her employment ended. See discussion supra, at section

III(B)(2)(a). Notably, by its own terms, the MERA protects only "persons within the

commonwealth." MGL ch. 93, § 102.

Second, even if the MERA applied to the Defendants' alleged breach of Macdonald's

oral employment contract, Count V would still fail because it is merely a restatement of

Macdonald's sexual harassment claim and, therefore, it is preempted by the exclusivity provision

---

[8] In addition, to the extent that Count IV merely restates Macdonald's sexual harassment claim, it also fails because it is preempted by the exclusivity provision of Chapter 151B. See Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996).

of Chapter 151B. See Green v. Wyman-Gordon Co., 422 Mass. 551, 557 (1996) (holding that

claims of workplace discrimination and harassment are not actionable under the MERA because

Chapter 151B provides the exclusive remedy for such claims); Agin v. Fed. White Cement, Inc.,

417 Mass. 669, 671-72 (1994) (same); Charland v. Muzi Motors, Inc., 417 Mass. 580, 586

(1994) (affirming Rule 12(b)(6) dismissal of employee's MERA claims because "G.L. c. 151B

provides the exclusive remedy for employment discrimination not based on preexisting tort law

or constitutional protections"); Cargill v. Harvard Univ., 60 Mass. App. Ct. 585, 604 (2004)

("MERA does not create an independent right to vindicate an alleged wrong that can otherwise

be redressed under G.L. c. 151B"). For the reasons explained in section III(B)(2), supra,

Macdonald's MERA claim fails even if restated as a violation of Chapter 151B.

Finally, even if the MERA applied and were not barred by the exclusivity provision of

Chapter 151B, Count V would still fail because Macdonald missed the statute of limitations by

filing this action more than three years after the alleged workplace sexual harassment ended on

September 25, 2000. See O'Hearn v. President & Fellows of Harvard Coll., 1996 WL 1348994,

at *2 (Mass. Super. Ct. Mar. 1996) (entering summary judgment against plaintiff on his MERA

claim because he "did not commence [his] action within the three years allowed by G.L. c. 260,

§ 5B").

### 6.    The Fraud/Deceit/Misrepresentation Claim (Count VI) Fails as a Matter of Law.

In Count VI, Macdonald purports to state a claim for fraud. Specifically, she claims that

the Defendants made two fraudulent statements on which she relied: (1) on June 26, 2000, the

Defendants allegedly falsely told Macdonald that her employment with Kaku Associates would

continue through May 31, 2001; and (2) on September 25, 2000, the Defendants allegedly falsely

20

stated in a letter that Macdonald had resigned her employment. See Complaint, ¶¶ 42, 44, 58-60, 171-78.

The statute of limitations for a fraud claim is three years under both Massachusetts and California law, and six years under Hawaii law. See MGL ch. 260, § 2A; Beaconsfield Townhouse Condo. Trust v. Zussman, 49 Mass. App. Ct. 757, 761 (2000); Cal. Civ. Code § 338(d); Averbach v. Vnescheconombank, 280 F. Supp. 2d 945, 956-57 (N.D. Cal. 2003); Haw. Rev. Stat. § 657-1(4); Eastman v. McGowan, 946 P.2d 1317, 1323 (Haw. 1997). Because Macdonald filed suit more than three years but less than six years after the last of the allegedly fraudulent statements was made on September 25, 2000, Count VI is time-barred if the Massachusetts or California statute of limitations applies, but not if the Hawaii statute applies. Thus, a conflict of laws exists.

### a.    The Conflict-of-Laws Analysis.

A federal court sitting in diversity must apply the conflict-of-laws rules of the forum state. See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Massachusetts considers a statute of limitations to be a matter of substantive, not procedural, law. See Nierman v. Hyatt Corp., 441 Mass. 693, 695 (2004). Therefore, when a conflict exists between two or more states' statutes of limitations, a court applying Massachusetts conflict-of-laws rules does not simply adopt the forum state's statute of limitations. See id. Instead, it follows the "functional approach" set forth in Section 142 of the Restatement. See id. at 693, 695 (holding that Texas statute of limitations barred negligence action brought by Massachusetts residents against Delaware corporation with principal place of business in Illinois, because all of the events constituting the alleged negligence took place at defendant's hotel in Texas; the hotel employee

who caused the accident presumably lived in Texas; and the plaintiffs were injured in Texas)

(citing Restatement (Second) of Conflicts of Laws § 142 (Supp. 1989)).

Section 142 of the Restatement, entitled "Statute of Limitations," provides:

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6.[9]  In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> (1) The forum will apply its own statute of limitations barring the claim.
>
> (2) The forum will apply its own statute of limitations permitting the claim unless:
>
>> (a) maintenance of the claim would serve no substantial interest of the forum; and
>>
>> (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

The Nierman court called this the "more significant relationship test."  Nierman, 441 Mass. at

697.  The test requires analysis of two factors:  "(1) whether Massachusetts has a substantial

interest in permitting the claims to go forward and (2) whether [another state] has a more

significant relationship to the parties and the . . . claim."  Id. at 696.  "The two criteria are

necessarily related and should be evaluated with some sensitivity to one another, *focusing on the*

---

[9] Section 6 of the Restatement, entitled "Choice-of-Law Principles," provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>> (a) the needs of the interstate and international systems,
>> (b) the relevant policies of the forum,
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>> (d) the protection of justified expectations,
>> (e) the basic policies underlying the particular field of law,
>> (f) certainty, predictability and uniformity of result, and
>> (g) ease in the determination and application of the law to be applied.

3707826v3

*statute of limitations issue*, and not on the underlying [claim]." Id. (internal quotations and citations omitted) (emphasis added).

        **b.**     **If Massachusetts or California Law Applies,
the Fraud Claim Is Time-Barred.**

Because the allegedly fraudulent statements were made outside Massachusetts by a non-Massachusetts resident to a non-Massachusetts resident whose alleged injury occurred outside Massachusetts, the "more significant relationship" test points to a state other than Massachusetts. See Restatement (Second) of Conflict of Laws, § 142 cmt (g), at 129 (where the only connection to the forum state is that it is the domicile of the plaintiff, and the state where the defendant resides has a more "significant relationship to important issues in the case, . . . the forum should entertain the claim only in extreme and unusual circumstances"); e.g., Held v. Mfrs. Hanover Leasing Corp., 912 F.2d 1197, 1203 (10th Cir. 1990) (although plaintiff lived in Colorado when the underlying events occurred and when he filed suit, New York's statute of limitations applied to ERISA claim because all of the underlying events occurred in New York and defendant's principal place of business was in New York), cited favorably in Stanley v. CF-VH Assocs., Inc., 956 F. Supp. 55, 59 (D. Mass. 1997). Instead, the Court should apply the statute of limitations of the state with the more significant relationship – either California or Hawaii.

The factor that would appear most relevant to the limitations period issue, see Nierman, 441 Mass. at 696, is Kaku's articulation of the two allegedly fraudulent statements. An analysis of this factor is impossible, however, because the Complaint does not indicate where he made those alleged statements. Because Rule 9(b) requires that fraud be pled with particularity and Macdonald has failed to specify the place where Kaku made the allegedly fraudulent statements, her claim must be dismissed. See Fed. R. Civ. P. 9(b); Powers v. Boston Cooper Corp., 926 F.2d

109, 111 (1st Cir. 1991) (Rule 9(b) requires that the complaint specify, *inter alia*, the place where the alleged misrepresentations were made).

In any event, even if Macdonald were to amend her Complaint to identify where the statements were made, her fraud claim would still fail. That is so because, if the statements were made in California and thus California's statute of limitations applies, the claim is time-barred, and if the statements were made in Hawaii and therefore Hawaii's statute of limitations applies, the claim would fail because the face of the Complaint makes clear that Macdonald cannot make out all the required elements.

> **c.    If Hawaii Law Applies, the Fraud Claim Fails Because the Face of the Complaint Makes Clear that Macdonald Cannot Make out All the Required Elements.**

Under Hawaii law, a plaintiff alleging fraud must plead that (1) the defendant made a false statement (2) which he knew to be false and (3) on which he intended the plaintiff to rely; and (4) the plaintiff reasonably relied on the statement to her detriment. See Matsuura v. E.I. Du Pont de Nemours & Co., 73 P.3d 687, 701 (Haw. 2003); Shoppe v. Gucci Am., Inc., 14 P.3d 1049, 1067 (Haw. 2000).[10]

The first allegedly fraudulent statement, Kaku's alleged promise on June 26, 2000 to employ Macdonald through May 31, 2001, is not actionable because Macdonald admits in her Complaint that it was not false when made. More specifically, she admits Kaku did not decide to break his promise until August 2000 at the earliest, when she began to rebuff his sexual advances, which was the cause of her termination. See Complaint, ¶ 61 ("Plaintiff was terminated by the Defendants because she refused to submit to Defendant Kaku's sexual demands"); id. ¶ 51 (Kaku's sexual demands began "[o]n or near August 2, 2000"). Because the

---

[10] The elements of a fraud claim are the same under California and Massachusetts law. See Small v. Fritz Co., 65 P.3d 1255, 1258 (Cal. 2003); Reisman v. KPMG Peat Marwick, 57 Mass. App. Ct. 100, 108-09, rev. denied, 439 Mass. 1105 (2003). Therefore, Macdonald's fraud claim fails on the merits no matter which state's law applies.

24

events that caused Kaku to breach his alleged promise did not begin until August 2000, his promise could not possibly have been false when he made it in June 2000.

Kaku's first alleged statement also is not actionable because Macdonald has failed to identify any pecuniary loss that she suffered by relying on the statement. For example, she has not alleged that she gave up an offer for a higher paying job in reliance on the alleged statement. See Zanakis-Pico v. Cutter Dodge, Inc., 47 P.3d 1222, 1233-34 (Haw. 2002) (to state a fraud claim under Hawaii law, the plaintiff must allege that she "suffered actual pecuniary loss" by relying on the defendant's false statement); Cresencia v. Kim, 878 P.2d 725, 736 (Haw. Ct. App. 1994) (finding that plaintiffs failed to identify recoverable fraud damages in their complaint).

The second allegedly fraudulent statement, Kaku's September 25, 2000 letter stating that Macdonald had resigned when in fact she had been fired, also is not actionable because Macdonald has not alleged that she somehow *relied* on the statement by engaging or not engaging in some action. Her general allegation that "Plaintiff relied on the misrepresentations," Complaint, ¶ 176, is insufficient to meet Rule 9(b)'s requirement that fraud be pled with particularity. See Fed. R. Civ. P. 9(b); e.g., Kusek v. Family Circle, Inc., 894 F. Supp. 522, 528 (D. Mass. 1995) (dismissing fraud claim where not pled with particularity); Presto v. Sequoia Sys., Inc., 633 F. Supp. 1117, 1119-20 (D. Mass, 1986) (same); Giuliani v. Chuck, 620 P.2d 733, 738 (Haw. Ct. App. 1980) (finding complaint insufficient to state a fraud claim where it indicated plaintiffs did not rely on the allegedly fraudulent statements). It is difficult to understand how anyone could detrimentally rely on the statement, "You have resigned."

Moreover, even if Macdonald had alleged in her Complaint that she took or refrained from taking some action in reliance on Kaku's letter, her reliance obviously was not reasonable or justifiable because she admits she *knew* Kaku's statement was false. See Complaint, ¶¶ 60-61

25

(Macdonald knew the statement was false at the time it was made because she knew she had not resigned but, rather, had been fired). It is axiomatic that a person cannot justifiably rely on the purported truth of a statement which she knows to be false.

In sum, if Massachusetts or California law applies to Macdonald's fraud claim, the claim is barred under the three-year statute of limitations. If Hawaii (or, for that matter, Massachusetts or California) law applies, the claim fails as a matter of law because, (1) with respect to Kaku's first alleged misrepresentation, (a) Macdonald has admitted that the statement was not false when made and (b) in any event she has not alleged that she suffered any pecuniary loss by relying on it; and (2) with respect to Kaku's second alleged misrepresentation, (a) Macdonald does not claim that she took or refrained from taking any action in reliance on it, and (b) any such reliance obviously would have been unjustifiable in any event since Macdonald admits she knew the statement was false.

### 7. The Contract Claim (Count VII) Fails as a Matter of Law.

In Count VII, Macdonald purports to state claims for breach of contract and breach of the implied covenant of good faith and fair dealing. In particular, she alleges that Kaku made an oral promise on June 26, 2000 to employ her through May 31, 2001, and the Defendants breached that contract by terminating her employment in a letter dated September 25, 2000. Complaint, ¶¶ 42, 44, 63, 180, 184. This claim is time-barred.

The statute of limitations for a claim on an oral contract is two years under California law and six years under Hawaii and Massachusetts law. See Cal. Civ. Code § 339; Swayzer v. Nestle Corp., 1999 US App. LEXIS 9243, No. 97-56675, at *1 (9th Cir. 1999) (unpublished); Mullins v. Rockwell Int'l Corp., 936 P.2d 1246, 1248 (Cal. 1997); Haw. Rev. Stat. § 657-1; Guillermo v. Hartford Life & Acc. Ins. Co., 986 F. Supp. 1334, 1339 (D. Haw. 1997); MGL ch. 260 § 2.

26

Because Macdonald filed suit more than two years but less than six years after the Defendants allegedly breached the oral contract, Count VII is time-barred if the California statute of limitations applies, but not if the Hawaii or Massachusetts statute applies.

Clearly Count VII has no connection whatsoever to Massachusetts, since Macdonald did not move to Massachusetts until almost two years after the date of the alleged breach. Therefore, the Massachusetts statute of limitations does not apply.

Although Macdonald has not alleged where Kaku was when he made the alleged oral promise or from where he sent the September 25, 2000 letter which allegedly breached the agreement, presumably both actions took place in California, since that is where Kaku lived and worked. Those two factors, and the fact that the purported contract was with a California company, lead to the conclusion that California has a more significant relationship with the contract claim than does Hawaii. It is also significant that the California Legislature has expressed its specific preference that oral contracts be governed by a shorter limitations period than written contracts, presumably to protect its citizens from the unique evidentiary problems that arise with litigation involving oral contracts. See Cal. Civ. Code § 337 (four-year statute of limitations applies to claims on written contracts). Thus, applying Hawaii's six-year limitations period would, contrary to the Restatement's directive, "frustrate the policy of a state with a closer connection with the case and whose statute of limitations would bar the claim." Restatement (Second) of Conflict of Laws § 142, cmt (g), at 129 (1989 Supp.); cf. Nierman v. Hyatt Corp., 441 Mass. 693, 697-98 (2004) (applying Texas' two-year statute of limitations to bar negligence claim instead of Massachusetts' three-year statute, in part because "[t]he Texas Legislature has prescribed a two-year period . . . [which] reflects its judgment as to the proper balance between the need of its citizens to redress injuries and their right to be protected from

27

protracted exposure to liability"). Because California's two-year limitations period governs the claim, it is time-barred.

### 8.    The Assault and Battery Claim
### (Count VIII) Fails as a Matter of Law.

In Count VIII, Macdonald purports to state a claim for assault and battery. Specifically, she alleges that Kaku grabbed and shoved her on April 25, 2001. See Complaint, ¶ 197.

She also claims that her sexual relations with Kaku were involuntary beginning as of March 2000. See id. ¶¶ 195-96. When the involuntary sex ended is unclear from the Complaint. The Complaint seems to indicate that it ended on or about June 5, 2000 when Macdonald retained an attorney and sent Kaku a letter telling him to stop his sexual advances. See id. ¶¶ 39-40 & Exhibit 1. There is no allegation in 236 of the 238 paragraphs in the Complaint that the sex continued past June 5, 2000. In fact, certain paragraphs indicate that it did *not* continue past that date. See id. ¶ 51 (alleging that on August 2, 2000, Kaku "demanded Plaintiff *resume* an intimate relationship"); id. ¶ 61 (alleging that Macdonald "*refused to submit to*" Kaku's demand that they resume their intimate relationship). However, in two paragraphs, ¶¶ 195 and 196, Macdonald avers that she continued telling Kaku *through August 2002* that she wanted to stop having sex with him. This would mean that she continued having "involuntary" sex with him for almost two months after her employment ended, and even after she retained at least three different lawyers, filed a sexual harassment complaint against Kaku, and filed a petition for a restraining order against him. Macdonald cannot possibly be alleging such incomprehensible behavior on her part.

The statute of limitations for a claim for assault and battery is two years in California and Hawaii, and three years in Massachusetts. See Cal. Civ. Code § 335.1; Haw. Rev. Stat. § 657-7;

28

Mukaida v. Hawaii, 159 F. Supp. 2d 1211, 1223 n.8 (D. Haw. 2001), aff'd, 2004 WL 68691 (9th

Cir. 2004); MGL ch. 260 § 4.

If Macdonald is alleging that the involuntary sex ended in June 2000, then the last act

underlying the assault and battery claim occurred on April 25, 2001, when Kaku allegedly

grabbed and shoved Macdonald.  If this is the case, then the claim is time-barred no matter which

of the three states' statute of limitations applies.  Because "the outcome is the same under the

substantive law of [each] jurisdiction," the court need not conduct the choice-of-law analysis to

determine which state's law actually applies.  Steinke v. Sungard Fin. Sys., Inc., 121 F.3d 763,

775 (1st Cir. 1997) (internal quotations omitted).

If, on the other hand, Macdonald is claiming that the involuntary sex ended on August 22,

2002 when she moved to Massachusetts, then a conflict of laws exists and the choice-of-law

analysis must be conducted.  Although Macdonald does not indicate where, as between

California or Hawaii, the allegedly involuntary sex took place, it is clear that it did not take place

in Massachusetts because it ended before she moved here.  Because all of the allegedly

involuntary sex took place in California or Hawaii, California and Hawaii have a more

significant relationship to Macdonald's claim than Massachusetts.  Under the two-year statute of

limitations of either of those two states, only the allegedly involuntary sex occurring within the

limitations period (May 21, 2002 - August 22, 2002) would be actionable.

> **9.      The Intentional and Negligent Infliction
> of Emotional Distress Claims (Counts IX
> and X) Fail as a Matter of Law.**

In Counts IX and X of the Complaint, Macdonald purports to state claims for intentional

and negligent infliction of emotional distress.  She has not specified when these torts occurred,

except to say that her intentional infliction claim is based on Kaku's alleged "sexual harassment"

29

and "sexual assault," while her negligent infliction claim is based on Kaku's alleged "sexual harassment" and "threats." Complaint, ¶¶ 206-07, 220-21. These counts must be dismissed because (1) Macdonald has alleged no negligence to support her negligent infliction claim; (2) both claims are time-barred; and (3) even if a portion of the intentional infliction claim is not time-barred, the defendants' alleged conduct during that time period was not sufficiently outrageous as a matter of law.

First, Macdonald's negligent infliction claim fails as a matter of law no matter which state's law applies because she has not alleged any negligence by the Defendants. See Calleon v. Miyagi, 876 P.2d 1278, 1288 (Haw. 1994) (stating elements of a negligent infliction claim); Huggins v. Longs Drug Stores Cal., Inc., 862 P.2d 148, 151 (Cal. 1993) (same); Payton v. Abbott Labs, 386 Mass. 540, 557 (1982) (same). Instead, her negligent infliction claim is based on Kaku's alleged threats and sexual harassment, both of which are intentional acts.

Second, both claims are time-barred. Under both California and Hawaii law, claims for intentional and negligent infliction of emotional distress must be brought within two years, while the limitations period under Massachusetts law is three years. See Cal. Civ. Code § 335.1; Haw. Rev. Stat. § 657-7; Linville v. Hawaii, 874 F. Supp. 1095, 1104 (D. Haw. 1994); MGL ch. 260 § 2A; Donovan v. Gardner, 50 Mass. App. Ct. 595, 599 n.8 (2000).

As noted above, Macdonald's emotional distress claims are based on three events: Kaku's alleged threats, assaults, and harassment. Macdonald admits the last alleged threat was made on May 9, 2001, and she appears to admit that the purported sexual assaults ended in June 2000. See supra sections III(B)(4), (8). She also appears to admit that the purported sexual harassment ended no later than May 21, 2001, the date she filed an *ex parte* petition for a restraining order. See Complaint, ¶¶ 78-79, 81. After that day, the only improper action

30

allegedly taken by Kaku is that he supposedly called Macdonald more than 60 times after she

moved to Massachusetts, but that bare allegation is contradicted by Kaku's sworn affidavit

stating that he called Macdonald only in the fall of 2002 and twice in January 2003 and none of

his calls were harassing or otherwise improper. See Kaku Aff., ¶¶ 12-13. Because no sexual

harassment occurred after May 21, 2001, this is the last date of any event supporting the

emotional distress claims. Accordingly, the claims are time-barred in their entirety if Hawaii's

or California's two-year limitations period applies, and they are actionable for only one day's

conduct (May 21, 2001) if Massachusetts' three-year statute of limitations applies.

     In any event, the Massachusetts statute of limitations does not apply because California

and Hawaii have more significant relationships with respect to the emotional distress claims.

Specifically, all of the conduct underlying the claims occurred in California and/or Hawaii

except for Kaku's phone calls into Massachusetts, which, as explained supra, were not harassing

and therefore cannot support an emotional distress claim as a matter of law. Because a two-year

statute of limitations applies and the events underlying the claims ended more than two years

before Macdonald filed suit, Counts IX and X are time-barred in their entirety.

     In the alternative, if the Complaint can fairly be read to allege that the events underlying

the claims continued through the day Macdonald sued on May 21, 2004, then the emotional

distress claims would not be time-barred to the extent they challenge events occurring between

May 21, 2002 and May 21, 2004. Importantly, however, the intentional infliction claim would

fail for this time period because the Defendants' conduct was not sufficiently outrageous as a

matter of law. Specifically, during those two years the only thing Kaku did (Kaku Associates is

not alleged to have done anything), is make a few non-harassing phone calls to Macdonald. As a

matter of law, non-harassing telephone calls – even if annoying or unwanted – are not outrageous

31

and, therefore, they cannot support an intentional infliction claim.  See, e.g., Keiter v. Penn Mut.

Ins. Co., 900 F. Supp. 1339, 1348 (D. Haw. 1995) (allowing defendant's Rule 12(b)(6) motion to

dismiss intentional infliction claim because defendant's alleged conduct, as a matter of law, was

not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community")

(internal quotation omitted); Shuler v. Walter E. Heller Western Inc., 1992 WL 38626, at *6 (9th

Cir. 1992) (unpublished) (same); see also Beecy v. Pucciarelli, 387 Mass. 589, 596 (1982)

(same); Conley v. Romeri, 60 Mass. App. Ct. 799, 805 (2004) (same).

In sum, both the intentional infliction and the negligent infliction claims are time-barred

in their entirety, and the negligent infliction claim also fails because Macdonald has not alleged

any negligence by the Defendants.  Moreover, to the extent the intentional infliction claim

implicates alleged conduct occurring during the two years immediately before Macdonald filed

suit, the claim would not be time-barred but it would fail anyway because the Defendants'

alleged conduct during that period was not outrageous as a matter of law.

### 10.    Macdonald's Respondeat Superior Claim (Count XI) Fails as a Matter of Law.

In Count XI, Macdonald purports to assert an independent claim of respondeat superior

against Kaku Associates based on the sexual harassment that Kaku allegedly inflicted on

Macdonald while they both were employed by Kaku Associates.  See Complaint, ¶¶ 229-31.

This claim must be dismissed because respondeat superior is not an independent tort but a form

of derivative liability.  "The rule of respondeat superior is familiar and simply stated:  an

employer is vicariously liable for the torts of its employees committed within the scope of

employment."  Lisa M. v. Henry Mayo Newhall Mem. Hosp., 907 P.2d 358, 360 (Cal. 1995);

accord Bailey v. Town of Bourne, 38 Mass. App. Ct. 70, 72 (1995); Kaopuiki v. Kealoha, 87

32

P.3d 910, 920 (Haw. Ct. App. 2003), cert. dismissed, 2004 Haw. LEXIS 235 (Haw. Apr. 8, 2004). Since Macdonald has already named Kaku Associates as a defendant in all ten of her substantive counts, Count XI is redundant and should be dismissed.

In any event, because Kaku is not liable on any of the substantive counts for the reasons explained supra, Kaku Associates cannot be held liable under a respondeat superior theory. "A finding that the agent or servant is not [liable] compels a similar finding, as matter of law, for the principal or master." Gangl v. Ford Motor Credit Co., 37 Mass. App. Ct. 561, 563 (1994); accord Shaw v. Hughes Aircraft Co., 100 Cal. Rptr. 2d 446, 453-54 (Cal. Ct. App. 2000); Davis v. Wholesale Motors, Inc., 949 P.2d 1026, 1047 (Haw. Ct. App. 1997); Restatement (Second) of Agency § 217A ("If the claim against the principal is based solely on the rules of respondeat superior, a judgment for the employee terminates the principal's liability").

## IV. CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the entire Complaint be dismissed with prejudice, either under Rule 12(b)(2) or Rule 12(b)(6).

Respectfully submitted,

KAKU ASSOCIATES, INC. and
DICK S. KAKU

By their attorneys,

*Lisa Gaulin*

Christine J. Wichers (BBO# 631857)
Lisa M. Gaulin (BBO# 654655)
CHOATE, HALL & STEWART
53 State Street
Boston, MA 02109
617-248-5000

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON
DATE 6-30-04 SIGNATURE *Gaulin*

Dated: June 30, 2004

33