UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANETTE MACDONALD,<br>　　　　　Plaintiff,<br>v.<br>KAKU ASSOCIATES, INC. and<br>DICK S. KAKU,<br>　　　　　Defendants. | Civil Action No. 04-11218-RCL |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

The Defendants, Kaku Associates, Inc. ("Kaku Associates") and Dick Kaku ("Kaku"), file this reply brief in support of their motion to dismiss the Complaint with prejudice.

The Complaint must be dismissed for lack of personal jurisdiction because the plaintiff, Nanette Macdonald ("Macdonald") has failed to rebut Kaku's affidavit with any evidence showing that either defendant has minimum contacts with Massachusetts. Macdonald subpoenaed Kaku's telephone and airline records but came up empty. She has not presented a shred of evidence supporting her allegation that Kaku has traveled to Massachusetts or that he has made harassing phone calls to her in Massachusetts. In the alternative, the Complaint must be dismissed under Rule 12(b)(6) because Macdonald has failed to show how any of her eleven counts state a claim on which relief can be granted.

### ARGUMENT

**A.　The Complaint Must Be Dismissed Because Macdonald Cannot Show that the Court Has Personal Jurisdiction Over the Defendants.**

In her argument that the Court has personal jurisdiction over the Defendants, Macdonald asserts only specific, not general, jurisdiction. See Opp. at 5-8. The burden of proving jurisdiction is hers. Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7 (1st Cir. 2002).

### *1.    Macdonald Has Failed to Establish Specific Personal Jurisdiction Over Kaku*

Macdonald's only allegation supporting her claim of specific jurisdiction over Kaku is that he supposedly made "numerous" harassing telephone calls to her in Massachusetts. Opp. at 6. To prove that Kaku made such telephone calls, Macdonald may not "rely on unsupported allegations in [her] pleadings." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992). Instead, she "must go beyond the pleadings and make affirmative proof." Id. Macdonald has failed to make any affirmative proof. Her failure, however, is not due to a lack of effort. On May 21, 2004, Macdonald subpoenaed Kaku's flight records from United Airlines and his telephone records from Verizon. See subpoenas (copies attached as Exhibits A, B). However, her subpoenas yielded no evidence supporting her naked allegation.

In fact, the ***only*** evidence Macdonald has presented is an affidavit in which she has averred that she has received 50-100 calls from Kaku since moving to Massachusetts. Macdonald Aff. ¶ 2.[1] In "several" of the calls she recognized Kaku's voice, id. ¶ 3, which she says in her Opposition was merely "in the background," Opp. at 3. But in the remainder, many of which were hang-up calls, Macdonald could not confirm that the caller was Kaku. Macdonald Aff. ¶ 3. On the contrary, the only basis for her wild hypothesis that the caller might have been Kaku is that she heard "background . . . noises like those heard when driving." Id. Given that millions of drivers in this country have cellular phones, Macdonald's supposition is beyond flimsy.

---

[1] Kaku has stated that he called Macdonald only 20 times in the fall of 2002 and twice in January 2003, and all the calls were friendly. Kaku Aff. (Defs' Principal Memo., Ex. 1) ¶ 12. His second affidavit, which is attached hereto as Exhibit C, corrects a small error: he made the two calls in February, not January, 2003. It should also be noted that Macdonald's assertion that Kaku sent a fax to one Ivan Cruz in which he made certain admissions, Opp. at 3, is found nowhere in either the Complaint or Macdonald's affidavit and, therefore, may not be considered on Defendants' motion to dismiss.

2

The question, then, is whether a Massachusetts court has specific personal jurisdiction over an out-of-state resident against whom ten statutory, tort, and contract claims have been brought, based almost exclusively on out-of-state conduct that occurred over six years when both parties lived out of state, where the jurisdictional claim is founded solely on the allegation that when the plaintiff subsequently moved to Massachusetts, the defendant placed "several" harassing phone calls to her over a two-year period. Respectfully, the answer is no. In our global and highly mobile society, the fact that an out-of-state defendant has made "several" allegedly harassing telephone calls to the plaintiff after she moved to the forum state is not enough to conclude that "the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state courts foreseeable." Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998).

Although Macdonald cites numerous cases for the proposition that a single phone call or letter into the forum state can support a finding of specific personal jurisdiction, see Opp. at 6-7, 9-10, none of those cases is on point. In fact, in one case the court declined personal jurisdiction despite there being many more contacts with the forum state than here. See Morrill v. Tong, 390 Mass. 120, 131-32 (1983) (Massachusetts court lacked personal jurisdiction over out-of-state defendant sued by Massachusetts plaintiff for child custody and support, even though the parties' first marital home was in Massachusetts, the defendant sent child support payments to Massachusetts, the defendant sent a letter to the plaintiff's attorney in Massachusetts, and the defendant sent gifts and letters to the children in Massachusetts and called them in Massachusetts). In another case cited by Macdonald, the court did not even reach the due process question. See Nova Biomed. Corp. v. Moller, 629 F.2d 190, 197 (1st Cir. 1980) (not

addressing the constitutionality of Massachusetts court's exercise of personal jurisdiction over Swiss citizen).

Several other opinions cited by Macdonald concerned contract disputes where, unlike here, the contract was negotiated and/or performed in the forum state. See Prod. Promotions, Inc. v. Cousteau, 495 F.2d 483, 497 (5th Cir. 1974) (Texas court had personal jurisdiction over French company sued by Texas company over a contract, where the contract was made in Texas and required some performance by the defendant in Texas); In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 222-23, 227 (6th Cir. 1972) (Ohio court had personal jurisdiction over Minnesota distributor sued by Ohio manufacturer over a contract, where the contract required the defendant to buy products that the plaintiff would make in Ohio, the contract was partly negotiated in Ohio, one shipment of products was delivered to the defendant's Ohio subsidiary, and the defendant's president several times visited the plaintiff's plant in Ohio); Electro-Craft Corp. v. Maxwell Elecs. Corp., 417 F.2d 365, 369 (8th Cir. 1969) (Minnesota court had personal jurisdiction over Texas manufacturer sued by Minnesota company over a sale contract, where the defendant negotiated the contract via mail and phone communications with the plaintiff in Minnesota, the plaintiff placed its order from Minnesota, payment was to be made through a Minnesota bank, and the defendant shipped its products to the plaintiff in Minnesota); see also Hahn v. Vt. Law School, 698 F.2d 48, 52 (1st Cir. 1983) (Massachusetts court had personal jurisdiction over Vermont law school sued for failing the plaintiff student, a Massachusetts resident, where defendant had sent application and acceptance letters to the plaintiff in Massachusetts, it recruited heavily in Massachusetts, it had many Massachusetts students every year, and it advertised in the *Boston Globe*).

Another case cited by Macdonald concerned patent infringement, which is not at issue here. See Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 219-20 (1st Cir. 1989) (Massachusetts court had personal jurisdiction over New York shoe importer sued by Massachusetts shoe manufacturer for patent infringement, where defendant had contacted a Massachusetts distributor to buy infringing shoes from it and sell them in Massachusetts).

The remaining cases cited by Macdonald concerned fraud claims, where, unlike here, the fraudulent statements were directed into the forum state. See Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 984 (1st Cir. 1986) (Massachusetts court had personal jurisdiction over British department store sued by Massachusetts company over fraudulent telex; not only was the telex directed into Massachusetts, but a bank account in defendant's name was opened in Massachusetts, an agent of the defendant visited the plaintiff's facility in Massachusetts, and the parties communicated many times by phone, mail, and telex); Salvador v. Meese, 641 F. Supp. 1413, 1415 (D. Mass. 1986) (Massachusetts court had personal jurisdiction over D.C. lawyer sued for fraud by Massachusetts residents, where defendant made the fraudulent statement at a meeting with the plaintiffs in Boston); N. Am. Video Corp. v. Leon, 480 F. Supp. 213, 218-19 (D. Mass. 1979) (Massachusetts court had personal jurisdiction over New York employees of the plaintiff, a Massachusetts company, where the defendants called and held meetings with plaintiff's employees in Massachusetts in order to defraud the plaintiff out of equipment shipped out of Massachusetts); see also Hugel v. McNell, 886 F.2d 1, 5 (1st Cir. 1989) (New Hampshire court had personal jurisdiction over out-of-state defendants who defamed the plaintiff, a well-known New Hampshire resident, by making false statements to *Washington Post* reporters

intending for the information to be disseminated nationwide and damage defendant's reputation in New Hampshire, which it did).[2]

Importantly, the telephone calls that Kaku allegedly made to Macdonald in Massachusetts, which are the sole basis for her jurisdictional argument, are relevant to only *two* of her eleven claims, specifically, her claims for intentional and negligent infliction of emotional distress (Counts IX and X). The alleged calls have nothing to do with Macdonald's claims of sexual harassment and discrimination in employment, which employment ended before she moved to Massachusetts (Counts I, II, III); the threats Kaku allegedly made to deter Macdonald from seeking legal redress, which threats ended before she moved to Massachusetts (Count IV); the allegedly discriminatory denial of Macdonald's right to enforce her alleged oral employment agreement, which denial occurred before she moved to Massachusetts (Count V); the alleged fraud, which ended before she moved to Massachusetts (Count VI); the oral contract which the Defendants allegedly breached before Macdonald moved to Massachusetts (Count VII); the assault and battery claim, which is based on the parties' sexual relations, which ended before Macdonald moved to Massachusetts (Count VIII); and the respondeat superior claim, which as a matter of law cannot apply to harassing phone calls that Kaku is not alleged to have made within the scope of his employment (Count XI).

Even if Macdonald could establish specific jurisdiction over Kaku for purposes of her two emotional distress claims, she clearly cannot do so with respect to any of her other claims because none of those are based, either in whole or in part, on any of the alleged contacts to

---

[2] Macdonald also relies on Lakeside Bridge & Steel Co. v. Mountain State Construction Co., 597 F.2d 596 (7th Cir. 1979), which the Defendants cited in their principal brief. Macdonald argues that a forum state has a greater interest in protecting its citizens in cases that involve "effects of a sort highly dangerous to persons and things," which she analogizes to the facts alleged here. Opp. at 7 (quoting Lakeside, 597 F.2d at 602). However, it is difficult to comprehend how hang-up phone calls are "highly dangerous." Cf. Lakeside, 597 F.2d at 598 (dispute concerned the sale of structural assemblies for a dam and reservoir).

6

Massachusetts (the phone calls). Because the Court lacks personal jurisdiction to decide those claims against Kaku, they must be dismissed. "Where a complaint contains two [or more] claims, . . . there must be an independent basis for the assertion of personal jurisdiction for each claim. Jurisdiction over one claim does not imply jurisdiction over another." Debreceni v. Bru-Jell Leasing Corp., 710 F. Supp. 15, 20 (D. Mass. 1989) (holding that Massachusetts court had personal jurisdiction over defendant for purposes of only one of the plaintiff's two claims). "Questions of specific jurisdiction are always tied to the particular claims asserted," and each claim must be "analyze[d] . . . discretely." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999) (holding that New Hampshire court lacked personal jurisdiction over defendants in both claims filed, which the court examined separately); accord, e.g., Macri v. Macri, 2002 WL 826823, at *11 (D.N.H. 2002) (holding that New Hampshire court had personal jurisdiction over defendants on plaintiffs' contract claims, but dismissing tort and copyright claims for lack of personal jurisdiction); Jack O'Donnell Chevrolet, Inc. v. Shankles, 276 F. Supp. 998, 1002 (N.D. Ill. 1967) (holding that Illinois court had personal jurisdiction over defendant on one count in the complaint, but dismissing two other counts for lack of personal jurisdiction); Anderson v. Century Prods. Co., 943 F. Supp. 137, 141 (D.N.H. 1996) ("Personal jurisdiction over the defendant must be proper for each and every cause of action in the complaint."); Intel Corp. v. Broadcom Corp., 167 F. Supp. 2d 692, 704 (D. Del. 2001) ("Intel could not use Broadcom's specific contacts with Delaware that support its patent infringement claims to assert [specific] personal jurisdiction over Broadcom with respect to unrelated contract or tort claims that did not arise out of those transactions in Delaware").

Finally, even if Macdonald could establish the first two requirements for a finding of personal jurisdiction (relatedness and purposeful availment), she still could never satisfy the third

requirement: that this Court's exercise of personal jurisdiction over Kaku would be fair. That is so because, except for a few phone calls, all of the alleged events occurring during the eight years covered by the Complaint (1996 – 2004) took place out of state when both parties lived out of state, and all the evidence and witnesses are out of state. Therefore, Massachusetts has little to no interest in adjudicating this dispute.[3]

### 2. *Macdonald Has Failed to Establish Specific Personal Jurisdiction Over Kaku Associates*

Macdonald has alleged no facts tying Kaku Associates to Massachusetts. As noted above, her only Massachusetts-related allegation against Kaku is that he supposedly called her in Massachusetts in 2002-04. Since there is no allegation that Kaku called Macdonald within the scope of his employment, there is clearly nothing on which to base a finding of specific personal jurisdiction over Kaku Associates.

### B. All Counts in the Complaint Must Be Dismissed for Failure to State a Claim on Which Relief Can Be Granted.

In the alternative, even if Macdonald could somehow establish personal jurisdiction over the Defendants, the Complaint would still need to be dismissed because each of the eleven counts fails to state a claim on which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

### 1. **The Title VII Claim (Count I) Fails as a Matter of Law.**

Macdonald argues that her Title VII claim is not untimely because Kaku "continued to harass [her] throughout the filing of her complaint in this case." Opp. at 11. Even if this baseless allegation were true, it still would be insufficient to save Macdonald's claim because

---

[3] To the extent Macdonald implies that it is always fair to assert specific personal jurisdiction over an out-of-state defendant whose contacts with the forum state underlie the tort claim brought against him, see Opp. at 8-9, she is wrong. See, e.g., Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 212 (1st Cir. 1994) (affirming Massachusetts court's denial of specific personal jurisdiction over California resident whose contacts with Massachusetts were the basis for a defamation claim brought against him, due to fairness concerns). And even if she were right, it still would not explain how the Court has personal jurisdiction over any of Macdonald's claims other than the emotional distress claims, since none of those claims has any connection to Massachusetts.

8

Title VII prohibits only discrimination *in employment*, see 42 U.S.C. § 2000e-2, and Macdonald admits that her alleged employment ended in 2000. See Cmplt, ¶¶ 58, 61. Because her Title VII claim accrued in 2000, it is now untimely.

In addition, Macdonald concedes that her Title VII claim is not actionable against Kaku individually. See Opp. at 11.

### 2. The Chapter 151B Claim (Count II) Fails as a Matter of Law.

Macdonald argues that the Defendants' alleged sexual harassment/discrimination violated Chapter 151B because the conduct was "directed against [her] in Massachusetts." Opp. at 12. She has missed the point. Chapter 151B prohibits only harassment and discrimination *in employment*. Since Macdonald has admitted that her alleged employment ended in 2000 and she only later moved to Massachusetts, see Cmplt, ¶¶ 58, 61, 87, it is clear from the face of her Complaint that any harassment or discrimination which the Defendants allegedly committed against her in Massachusetts did not arise in the employment context and thus is not actionable under Chapter 151B.

In any event, Macdonald does not dispute that even if Chapter 151B applied, her claim is time-barred.

### 3. The Claim Under MGL Chapter 214, § 1C (Count III) Fails as a Matter of Law.

Although her Opposition is muddled, it appears Macdonald is arguing that the Massachusetts Sexual Harassment Statute, MGL ch. 214, § 1C, prohibited Kaku's alleged harassment of her in Massachusetts long after her employment ended in Hawaii/California, because the alleged harassment began when she was an employee of Kaku Associates in Hawaii/California. See Opp. at 12. This argument is nonsensical. If Macdonald was sexually harassed while employed by Kaku Associates in Hawaii/California, her remedy was to file a

9

claim with the EEOC (or the Hawaii or California anti-discrimination agency) promptly after her employment ended in September 2000 – which, in fact, she did. If she felt Kaku thereafter sexually harassed her in retaliation for filing her EEOC claim, her remedy was to amend her EEOC charge to allege retaliation. Instead of doing this, she voluntarily withdrew her charge.

The relevant question here is whether Macdonald has a claim under the Massachusetts Sexual Harassment Statute where she has not alleged that she was ever sexually harassed as a Massachusetts employee. The answer is clearly no, because the statute prohibits only sexual harassment in employment (and education).[4]

In any event, Macdonald does not dispute that even if the Massachusetts Sexual Harassment Statute somehow applied, her claim would still fail because it would be both barred by the exclusivity provision of Chapter 151B and time-barred.

### 4. The Claim Under the Massachusetts Civil Rights Act (Count IV) Fails as a Matter of Law.

Macdonald has not explained why Count IV states a claim on which relief can be granted, except to re-invoke the unsupportable argument she makes regarding Count III. See Opp. at 13. In fact, it would be unconstitutional to hold that the MCRA prohibits alleged threats made out of state when both parties lived out of state, based solely on the fact that the plaintiff moved to Massachusetts after the alleged threats ended. In addition, the claim is time-barred.

### 5. The Claim Under the Massachusetts Equal Rights Act (Count V) Fails as a Matter of Law.

Macdonald appears to concede that Count V fails. She has not argued to the contrary anywhere in her Opposition.

---

[4] It is unclear why Macdonald references her alleged independent contractor status and severance, as those have nothing to do with anything. See Opp. at 13. In addition, she cannot defeat Defendants' motion to dismiss by now averring that she had a "continuing employment agreement" and is an "employee in Massachusetts" of Kaku Associates, id., since she has admitted in her Complaint that her employment ended in September 2000. Cmplt, ¶¶ 58, 61.

### 6. The Fraud/Deceit/Misrepresentation Claim (Count VI) Fails as a Matter of Law.

Macdonald argues that her fraud claim is not barred by the three-year statute of limitations under both Massachusetts and California law because her claim "is based on conduct continuing into this year." Opp. at 13. Macdonald's unsupported assertion is belied by her own admission. Specifically, she admitted in her Complaint that Kaku made only two allegedly fraudulent statements: on June 26, 2000, he promised to employ her through May 31, 2001, and on September 25, 2000, he sent a letter stating that Macdonald had resigned when in fact she had been fired. See Cmplt, ¶¶ 42, 44, 58-60, 171-78. A claim for fraud accrues when the plaintiff knew or should have known of the facts constituting the fraud. See Riley v. Presnell, 409 Mass. 239, 240 (1991); Averbach v. Vnescheconombank, 280 F. Supp. 2d 945, 957 (N.D. Cal. 2003) (citing Cal Civ. Code § 338(d)). Here, Macdonald knew the June 2000 statement was false by September 2000, when Kaku Associates allegedly terminated her, and she knew the September 2000 statement was false as soon as she received it. See Cmplt, ¶¶ 60-61. Because Macdonald filed her Complaint more than three years after she discovered the alleged fraud, Count VI is time-barred if the statute of limitations of either Massachusetts or California applies.

Moreover, Macdonald does not dispute that under the law of Massachusetts, California, *and* Hawaii, the fraud claim fails because the face of the Complaint makes clear that she cannot make out all the required elements as a matter of law. Specifically, with respect to the statement allegedly made in June 2000, she cannot establish either falsity or damages, and with respect to the statement allegedly made in September 2000, she cannot establish justifiable reliance. See Defs' Principal Memo. at 24-26. Because Macdonald does not argue to the contrary, Count VI must be dismissed.

### 7. The Contract Claim (Count VII) Fails as a Matter of Law.

Macdonald argues that her contract claim is not time-barred because Massachusetts' six-year statute of limitations applies. Opp. at 13-14. In support of this contention, she states simply that "the breach of contract occurred here." Id. This contradicts her Complaint, in which Macdonald has averred that the Defendants breached the alleged oral contract of employment by firing her in September 2000, long before she moved to Massachusetts. See Cmplt, ¶¶ 42, 44, 63, 180, 184.

### 8. The Assault and Battery Claim (Count VIII) Fails as a Matter of Law.

Macdonald's claim for assault and battery is based on her sexual relations with Kaku and one occasion in April 2001 when Kaku allegedly shoved her. See id. ¶ 197. She has not averred that the sex extended past June 5, 2000, when she retained an attorney and sent Kaku a letter telling him to stop his advances. See id. ¶¶ 39-40 & Exhibit 1; Opp. at 14. Since the alleged misconduct underlying the claim ended more than three years before Macdonald filed suit, Count VIII is time-barred no matter whether the statute of limitations of Massachusetts (three years), California (two years), or Hawaii (two years) applies.

### 9. The Intentional and Negligent Infliction of Emotional Distress Claims (Counts IX and X) Fail as a Matter of Law.

Macdonald does not dispute that Count X fails as matter of law because she has pled no negligence. See Opp. at 14.

In addition, both emotional distress claims are time-barred because the applicable statute of limitations is either California's or Hawaii's, both of which are two years, and the challenged conduct ended by May 2001. Thereafter, Macdonald alleges only that Kaku made up to 100

hang-up calls. See Macdonald Aff. ¶¶ 2-3. Although Kaku denies the allegation, see Kaku Aff. ¶¶ 12-13, even if Macdonald's allegation were true, her claim would still fail as a matter of law because the alleged misconduct was relatively benign. Macdonald has not alleged, for example, that when Kaku supposedly called, he threatened to kill her or set fire to her house. For conduct to rise to the level of intentional infliction of emotional distress, it must "exceed all possible bounds of decency" and be "utterly intolerable in a civilized community." See cases cited in Defs' Principal Brief at 32. Hang-up calls, standing alone, simply do not meet this definition as a matter of law.

### 10. Macdonald's Respondeat Superior Claim (Count XI) Fails as a Matter of Law.

Count XI must be dismissed because, as Macdonald herself admits, the claim "is not viable as a separate count." Opp. at 14. In addition, because all the claims fail against Kaku, they necessarily fail against Kaku Associates.

### CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the entire Complaint be dismissed with prejudice, either under Rule 12(b)(2) or Rule 12(b)(6).

## REQUEST FOR AN ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Defendants Dick S. Kaku and Kaku Associates, Inc. respectfully request oral argument on their motion to dismiss.

Respectfully submitted,

KAKU ASSOCIATES, INC. and
DICK S. KAKU

By their attorneys,

*/s/ Lisa Gaulin*

Christine J. Wichers (BBO# 631857)
Lisa M. Gaulin (BBO# 654655)
CHOATE, HALL & STEWART
53 State Street
Boston, MA 02109
617-248-5000

Dated: October 18, 2004

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL/HAND ON
DATE: 10/19/04   SIGNATURE: _____